**PERDUE FARMS, INC., a Maryland Corporation, Plaintiff-Counter-Defendant,**

v.

**MOTTS, INC. OF MISSISSIPPI, a Mississippi Corporation, Defendant-Counter-Claimant.**

No. WC 75–101–S.

United States District Court, N. D. Mississippi, W. D.

April 21, 1978.
On Motion to Reconsider July 21, 1978.

Will A. Hickman, Sumners, Hickman & Rayburn, Oxford, Miss., for plaintiff-counter-defendant.

John S. Throop, Jr., Water Valley, Miss., Lowell E. Grisham, Ethridge & Grisham, Oxford, Miss., for defendant-counter-claimant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This case is before the court for consideration of (1) defendant's motion to amend and supplement counterclaim, (2) defendant's motion to amend counterclaim, and (3) plaintiff's motion to dismiss defendant's counterclaim for failure to state a claim or in the alternative for summary judgment.

Plaintiff Perdue Farms, Inc. (Perdue) sells dressed poultry under the brand name Perdue Roasters. Perdue claims that defendant Motts, Inc. of Mississippi (Motts) received, but has not paid for several deliveries of Perdue Roasters and brings this diversity action [1] to collect the amount it claims Motts owes.

Motts has filed an answer and a counterclaim. In the answer, Motts admits refusing to pay the amount demanded by Perdue but denies that it owes Perdue any amount. Motts' counterclaim seeks recovery of damages from Perdue on two grounds. Count I of the counterclaim alleges that Perdue breached two contracts it had with Motts. Count II is a claim of malicious interference with a contract where Motts alleges that Perdue interfered with and caused the breach of a contract that Motts had with another party.

Perdue's answer to the counterclaim denies all of Motts' allegations and presents the affirmative defense that the contracts relied upon by Motts in the counterclaim do not satisfy the statute of frauds and are therefore unenforceable. This statute of frauds defense is the basis of Perdue's pending motion to dismiss or for summary judgment.

## I. MOTTS' MOTION TO AMEND AND SUPPLEMENT COUNTERCLAIM AND MOTION TO AMEND COUNTERCLAIM

█ These motions are Motts' second and third requests to amend and/or supplement its counterclaim. After Motts filed its answer and counterclaim, Perdue filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) raising the same statute of frauds defense that is raised in its pending motion. Motts opposed that motion and filed its first motion to amend and supplement its counterclaim. After considering the two motions, the court denied Perdue's motion to dismiss and granted Motts' motion to amend and supplement its counterclaim.

Motts' pending motion to amend and supplement counterclaim would amend Count I of the counterclaim by adding sentences alleging the satisfaction of certain prerequisites of the statute of frauds, discussed *infra*. One amendment sought by this motion, which would add the reverse side to two exhibits to the counterclaim, is redundant because the entire documents—front and rear sides—were made exhibits to the counterclaim when defendant earlier amended its counterclaim.

The other motion to amend counterclaim seeks to make a technical correction to Count I. It would correct a date that was mistakenly stated.

The court rejects the implication by Perdue that these amendments are proposed by Motts to create evidence to defeat Perdue's pending motion to dismiss or for summary

1. 28 U.S.C. § 1332. Perdue alleges that Motts is incorporated under the laws of Mississippi and has its principal place of business there. Perdue states that it is incorporated in Maryland but does not state its principal place of business, one of the factors used to determine the citizenship of a corporation. 28 U.S.C. § 1333(c). The court will require Perdue to amend the complaint to state its principal place of business.

judgment. The amendments do not change the substance of the counterclaim but they do serve to make it conform to the factual basis of Motts' argument against Perdue's motion. *See* 6 *Moore's Federal Practice,* ¶¶ 56.02[4], 56.10 (2d ed. 1974). Under the circumstances present here, the court believes that justice is best served by allowing the amendments. The court will sustain the motions and allow defendant to file an amended counterclaim.

## II. PERDUE'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

The court will treat the motion as one for summary judgment. Perdue argues that the contracts on which Motts relies in the counterclaim do not satisfy the statute of frauds and therefore are not enforceable. A summary of the facts follows. No discovery has occurred. The facts were taken from the pleadings and affidavits filed by the parties and have been viewed in the light most favorable to Motts, the party opposing the summary judgment motion. *See United States v. Hangar One, Inc.,* 563 F.2d 1155, 1157 (5th Cir. 1977).

Motts alleges that it made two contracts with Perdue—one on October 30, 1975, and the other on November 10, 1975,—and admits that they were oral contracts. As alleged by Motts the contracts provided that Motts was to purchase and Perdue was to sell a designated amount of Perdue Roasters and that on specified dates Motts was to send its trucks to Perdue's Maryland plant to pick up the roasters. Motts states that the parties did not mention or discuss payment terms for these two contracts. Motts claims the parties assumed that the billing practice which Perdue had used for previous contracts would be followed with these contracts. Under that billing practice the roasters were invoiced the day after delivery and payment was due 7 days after the date of billing. According to Motts, this billing practice was instituted by Perdue after Motts and Perdue made their first contract and had been used with all contracts until the October 30, and November 10, 1975, contracts.

To confirm the October 30, 1975, and November 10, 1975, contracts, Motts mailed to Perdue Confirmation of Purchase No. 3384 (No. 3384) and Confirmation of Purchase No. 3422 (No. 3422), respectively. (A copy of No. 3384 and No. 3422 are attached to this opinion as Appendices A and B, respectively.) Motts alleges that each confirmation was mailed postage prepaid through the United States Mail to Perdue at its usual mailing address, that Perdue received each confirmation and that Perdue did not object to either confirmation.

Motts claims that when its trucks arrived at Perdue's Maryland plant to pick up the roasters purchased in the October 30, 1975, contract, Perdue informed Motts' drivers that the roasters would not be loaded unless complete payment was made before delivery. Perdue then informed Motts' office that credit terms were not available and that the roasters purchased in the November 10, 1975, contract would not be delivered unless Motts paid for them on the date of delivery.

Perdue's refusal to follow the above-described billing practice, which Motts claims was tacitly recognized by the parties as a term of the October 30, and November 10, 1975, contracts, is the basis for Motts' claim for breach of contract in Count I of the counterclaim. Motts contends that Perdue breached both contracts by demanding payment on the date of delivery and by refusing to load the roasters unless the advance payment was made.

In Count II of the counterclaim, Motts states that it had a contract with Dairyland, Inc. (Dairyland) which provided that Motts was to resell to Dairyland the Perdue Roasters purchased from Perdue. Motts does not state whether the contract with Dairyland was an oral or a written contract. Motts alleges that at the time Perdue breached the October 30, and November 10, 1975, contracts, Perdue informed Dairyland that Motts would not be able to deliver the roasters it had contracted to resell to Dairyland and then persuaded Dairyland to purchase the roasters directly from Perdue thereby causing Dairyland to breach its

contract with Motts. This alleged action by Perdue is the basis for Motts claim of malicious interference with a contract which is presented in Count II of the counterclaim.

### A. Motion for Summary Judgment on Count I.

Although Perdue denies that the October 30, and November 10, 1975, contracts exist, it contends that if, arguendo, the contracts do exist summary judgment should be granted and Count I of the counterclaim dismissed because the contracts do not satisfy the statute of frauds found in Miss. Code Ann. § 75–2–201 (1972). Specifically Perdue contends that Motts has not and cannot show satisfaction of section 75–2–201(1), (2). Subsections 1 and 2 read:

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

Perdue argues (1) that section 75–2–201(1) has not been satisfied because Motts does not have a writing which was signed by Perdue and which indicates that the contracts were made and (2) that Motts cannot rely on section 75–2–201(2) because Motts has not met all the prerequisites for invoking that subsection.

■ Miss.Code Ann. § 75–2–201 (1972) is a verbatim enactment of Uniform Commercial Code § 2–201 (UCC § 2–201) which is the statute of frauds provision of Article 2 of the Uniform Commercial Code. Neither party questions the application of section 75–2–201 to the facts alleged in this case and the court finds it controlling.[2]

UCC § 2–201(1) [§ 75–2–201(1)] deals with the basic method of satisfying the statute of frauds—by the use of a writing. In *Derden v. Morris*, 247 So.2d 838 (Miss. 1971), the Mississippi Supreme Court dealt for the first time with section 75–2–201(1) and discussed the requirements of a writing under this subsection. The court stated:

**2.** UCC § 2–201 [§ 75–2–201] is one of four statute of frauds found in the Code; the other three being UCC § 1–206 [§ 75–1–206], UCC § 8–319 [§ 75–8–319], UCC § 9–206 [§ 75–9–206]. By its own terms, UCC § 2–201 [§ 75–2–201] is limited to "contract[s] for the sale of goods for the price of five hundred dollars ($500.00) or more . . . ." Perdue Roasters are "goods" as that term is defined in section 75–2–105(1) and the pleadings show that the price of the roasters involved exceeds $500.00.

Section 75–2–201(2) applies only when both parties are merchants. Miss.Code Ann. § 75–2–104(3) (1972). Motts alleges that both parties are merchants and Perdue has not contested the assertion. From the facts as alleged in the pleadings the court finds that for the purpose of considering the motion for summary judgment both parties are "merchants" as that term is defined in Miss.Code Ann. § 75–2–104(1) (1972).

UCC § 2–201(2) [§ 75–2–201(2)] is only one of several sections in Article 2 of the Code establishing a different standard or procedure for merchants. *E. g.* UCC §§ 2–205, –207(2), –312(3) [§§ 75–2–205, –207(2), –312(3)]. For a discussion of the sections in Article 2 treating merchants differently from non-merchants, see Vanmeveren, *The Uniform Commercial Code—Sales—Special Treatment for Merchants*, 7 Am.Bus.L.J. 219 (1970).

For a discussion of The Code's provisions as adopted in Mississippi, see, The Uniform Commercial Code Committee of the Mississippi State Bar, *Summary of the Uniform Commercial Code for Mississippi Lawyers* (1967), *found at the end of* Miss.Code Ann. §§ 41A:1–101 to 10–105 (Special Supp.1967). Section 75–2–201 is discussed at *Id.* at xii–xiii.

[T]he official comment to the Uniform Commercial Code establishes three definite and invariable requirements as to the memorandum necessary to take a case outside the statute of frauds. In the first place, the memorandum must evidence a contract for the sale of goods; secondly, it must be signed by the party against whom enforcement is sought; and, thirdly, it must specify a quantity.[3]

*Id.* at 839, *cited with approval in Austin v. Montgomery,* 336 So.2d 745, 750 (Miss.1976) *and in Fortune Furniture Manufacturing Co. v. Mid-South Plastic Fabric Co.,* 310 So.2d 725, 728 (Miss.1975).

Motts admits that the October 30, and November 10, 1975, contracts are oral contracts and does not claim to have a writing which meets the requirements of section 75–2–201(1). However, Motts does argue that Confirmations of Purchase No. 3384 and No. 3422 are writings in confirmation of the two oral contracts, that these two writings meet the prerequisites of section 75–2–201(2) and thereby take the oral contracts outside the statute of frauds. The parties have not cited and the court has not found any reported decisions dealing with Miss.Code Ann. § 75–2–201(2) (1972).

■ UCC § 2–201(2) is a new provision to the statute of frauds which makes a significant change to the statute and provides merchants with an alternate method of satisfying the writing requirement of UCC § 2–201(1).[4] Other statutes of frauds have usually required, inter alia, that in order for a writing to satisfy that statute, it must be signed by the party who is to be charged by the contract. *E. g.* Miss.Code Ann. § 15–3–1 (1972); Miss.Code Ann. § 268 (1942) (superceded by Miss.Code Ann. § 75–2–201 (1972)); Uniform Sales Act § 4. UCC § 2–201(2) eliminates this signature requirement when both parties are merchants. Under UCC § 2–201(2) if the merchant sending the confirmatory writing has met the prerequisites of the subsection and if the merchant receiving the writing has not given written notice of objection within 10 days of its receipt, then the confirmatory writing satisfies the statute of frauds even though the receiving merchant did not sign it.

UCC § 2–201(2) was drafted to correct an unfair condition which developed under other statutes of frauds when one contracting party sent a letter to the other contracting party to confirm an oral contract made by them.[5] The party sending the confirmatory letter often could not invoke the statute of frauds as a defense because he had signed a writing which satisfied the statute. The party receiving the confirmatory writing

---

**3.** The Mississippi Supreme Court relied on Uniform Commercial Code § 2–201, Comment 1, which provides in part:

> 1. The required writing need not contain all the material terms of the contract and such material terms as are stated need not be *precisely stated.* All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction. . . . The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted.

> Only three definite and invariable requirements as to the memorandum are made by this subsection. First, it must evidence a contract for the sale of goods; second, it must be "signed", a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity.

For a discussion of the requirements a writing must meet to satisfy UCC § 2–201(1) [§ 75–2–201(1)] see 3 Bender's UCC Service, R. Dusenberg & L. King, Sales and Bulk Transfers under the Uniform Commercial Code § 2.04[1], [2] at 2–48 to –63 (1975).

**4.** 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–63; Comment, *Changes Wrought in the Statute of Frauds by the Uniform Commercial Code,* 48 Marq.L.Rev. 571, 578 (1965) [hereafter cited as Comment, *Changes* ]; Comment, *The Uniform Commercial Code's Statute of Frauds for Sales of Goods,* 11 Vill.L.Rev. 370, 377 (1966) [hereafter cited as Comment, *The UCC's Statute of Frauds.*]

**5.** W. Hawkland, Sales & Bulk Sales 28 (1958), 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–72; Comment, *Changes, supra* note 4, at 578.

had not signed the confirmatory writing. If the contract proved to be advantageous for the receiving party, he was able to enforce it against the sending merchant. But if the contract was not to the receiving party's advantage, he could refuse to perform, assert the statute of frauds as a defense and prevent the sending party from enforcing the oral contract.[6] UCC § 2–201(2) attempts to remove this inequity and thereby encourage the sending of writings to confirm oral contracts.[7]

> If the recipient of the letter of confirmation does not object to it within ten days, neither he nor the sender can invoke the Statute of Frauds. On the other hand, if the recipient does object to it within ten days, both have Statute of Frauds protection.[8]

■ The limited effect of failing to timely give written notice of objection deserves emphasis. A confirmatory writing to which no timely written notice of objection has been given, only prevents the merchant, who failed to timely give written notice of objection, from invoking the statute of frauds as a defense.[9] The sending merchant still has the burden of proving that a contract was made and the terms of that contract.[10] Although the confirmatory writing may be used as evidence to prove the contract's terms, it is not conclusive proof. The receiving merchant is not bound by the terms of the confirmatory writing merely because he failed to give timely written notice of objection and he is not barred "from proving that the terms of the oral contract were different than those set forth in the confirmatory writing."[11]

UCC § 2–201(2) contains several prerequisites which must be met before a merchant can invoke the subsection to satisfy the statute of frauds. The merchant sending the writing must show that:

> (1) Both parties are merchants;
>
> (2) The writing was in confirmation of the contract and sufficient against the sender;
>
> (3) The writing was received by the other merchant within a reasonable time after the contract was made;
>
> (4) The merchant receiving the writing had reason to know of its content; and
>
> (5) The merchant receiving the writing did not give written notice of objection within 10 days after the date of receipt.[12]

■ In order for Motts to prove at the trial of the case that the October 30, and November 10, 1975, contracts were made and to prove the terms of those contracts, it must show that the statute of frauds has

---

**6.** *E. g., Tiffany, Inc. v. W. M. K. Transit Mix, Inc.*, 16 Ariz.App. 415, 493 P.2d 1220, 1223 (1972); *Azevedo v. Minister*, 86 Nev. 576, 471 P.2d 661, 665 (1970); W. Hawkland, Sales and Bulk Sales 36 (3d ed. 1976); Comment, *Changes, supra* note 4, at 578; Comment, *The UCC's Statute of Frauds, supra* note 4, at 377.

**7.** W. Hawkland, *supra* note 6, at 37; *see* 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–72.

**8.** 1 W. Hawkland, A Transactional Guide to the Uniform Commercial Code 26 (1964).

**9.** Uniform Commercial Code § 2–201, Comment 3; *E. g. I. S. Joseph Co. v. Citrus Feed Co.*, 490 F.2d 185, 188 (5th Cir. 1974) (Applying Florida law); *Automotive Spares Corp. v. Archie Bearings Co.*, 382 F.Supp. 513, 515 (N.D. Ill.1974) (Applying Illinois law).

**10.** Uniform Commercial Code § 2–201, Comment 3; 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–73; *see Harry Rubin & Sons, Inc.*

*v. Consolidated Pipe Co.*, 396 Pa. 506, 153 A.2d 472, 476 (1959); *Azevedo v. Minister*, 86 Nev. 576, 471 P.2d 661, 665 (1970); 1 R. Anderson, Uniform Commercial Code § 2–201:53 at 285 (2d ed. 1970).

**11.** 1 R. Anderson, *supra* note 10, § 2–201:53 at 285; 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–73 to –74, –77.

**12.** *See Doral Hosiery Corp. v. Sav-A-Stop, Inc.*, 377 F.Supp. 387, 388 (E.D.Pa.1974); *A & G Construction Co. v. Reid Brothers Logging Co.*, 547 P.2d 1207, 1216 (Alas.1976); *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.*, 396 Pa. 506, 153 A.2d 472, 475 (1959); 1 R. Anderson, *supra* note 10, § 2–201:52 at 284–85; 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–65; W. Hawkland, *supra* note 6, at 37.

For a discussion of the requirements of UCC § 2–201(2), see 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–64 to –71.

been satisfied. If Motts is going to rely on the procedure in section 75–2–201(2) to satisfy the statute of frauds, it must show that all of the prerequisites of that subsection have been met.[13] However, for the purpose of ruling on the pending summary judgment motion, the burden of proof shifts to Perdue. In order for Perdue to prevail it must show there is no dispute as to any material fact and that under section 75–2–201(2), the applicable substantive law, Motts' Confirmations of Purchase No. 3384 and No. 3422 cannot meet that subsection's prerequisites and therefore the oral contracts of October 30, and November 10, 1975, are not enforceable. "This is true because the burden to show that there is no genuine issue of material fact rests on the party moving for summary judgment, whether he or his opponent would at trial have the burden of proof on the issue concerned; and rests on him whether he is by it required to show the existence or non-existence of facts." 6 *Moore's Federal Practice* ¶ 56.15[13] at 56–480 to –481 (2d ed. 1974) (footnotes omitted).

Perdue claims that No. 3384 does not meet the following prerequisites of section 75–2–201(2): (1) No. 3384 is only an order for roasters and is not a writing in confirmation of the October 30, 1975, contract; (2) Motts has not shown that Perdue actually received No. 3384; and (3) Motts has not shown that Perdue had reason to know of the contents of No. 3384.

Perdue contends that Motts cannot rely on No. 3422 to satisfy the statute of frauds for the November 10, 1975, contract because (1) No. 3422 is only an order for roasters and does not qualify as a writing in confirmation under section 75–2–201(2) and (2) Perdue objected in writing to the contents of No. 3422 within 10 days of its receipt. The court will discuss separately each Confirmation of Purchase.

1. Confirmation of Purchase No. 3384.

a. No. 3384 is not a writing in confirmation of the October 30, 1975, contract and sufficient against the sender.

Perdue argues that No. 3384 does not meet this requirement because it does not refer to any oral contract. Perdue contends that the language used in No. 3384 shows that the document is only an order *i. e.,* an offer to purchase roasters, and in support of that argument points to the last sentence on the front of No. 3384 which reads: "The terms and conditions on the reverse side of this Confirmation are an integral part of this *order.*" (emphasis added). Perdue argues that since No. 3384 does not refer to any oral contract previously made by the parties but in fact is only an offer to buy roasters and since there is no indication of Perdue's acceptance, No. 3384 does not qualify as a *writing in confirmation of a contract.*

Before the court can decide whether No. 3384 is a "writing in confirmation" under section 75–2–201(2), it must determine what criteria should be used to judge the writing. Uniform Commercial Code § 2–201(2) and the official comments do not prescribe any particular form for a "writing in confirmation" and except for the statement that the writing be "in confirmation of the contract and sufficient against the sender," the subsection and official comments are silent on the content of such a writing. Although one commentator has suggested that the court might apply a stricter standard when judging a writing under UCC § 2–201(2) than is used when judging a writing under UCC § 2–201(1) and require a writing under UCC § 2–201(2) to contain more detailed terms than a writing under UCC § 2–201(1) is required to have,[14] the court's examination of the case law and other authorities dealing with the issue leads it to reject such a position and to

---

13. *See Nelson v. Union Equity Co-Operative Exchange,* 536 S.W.2d 635, 636 (Tex.Ct.Civ. App.1976); 3 Bender's UCC Service, *supra* note 3, at § 2.04[2] at 2 64 to 69. (Party relying on UCC § 2–201(2) has burden of showing that all prerequisites have been met).

14. 3 Bender's UCC Service *supra* note 3, § 2.04[2] at 2–67 to –68.

find that a writing under section 75–2–201(2) must meet the following standards.

First, the writing must be "sufficient against the sender."[15] In order for a writing to be "sufficient against the sender" it must satisfy the requirements of UCC § 2–201(1) so that the sending merchant cannot invoke the statute of frauds as a defense.[16] Thus, the writing must meet the three essential requirements enunciated by the court in *Derden v. Morris,* 247 So.2d 838, 839 (Miss.1971) (See text accompanying note 3, *supra* ).

Second, the writing must be in confirmation of a contract. This means that the oral agreement must have been made before the drafting of the writing. A writing cannot confirm an oral agreement reached after the writing was drafted.[17] However, the writing does not have to state that it is sent in confirmation of the oral transaction and does not have to specifically refer to the oral agreement.[18] "All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction."[19]

15. *E. g., A & G Construction Co. v. Reid Brothers Logging Co.,* 547 P.2d 1207, 1216 (Ala. 1976); *Reich v. Helen Harper, Inc.,* 3 UCC Rep.Serv. 1048, 1051 (New York City Civ.Ct. 1966); *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.,* 396 Pa. 506, 153 A.2d 472, 475 (1959); *John A. Wickersham Engineering & Construction, Inc. v. Arbutus Steel Co.,* 1 UCC Rep.Serv. 49, 52 (Pa.Ct.C.P.1962); Comment, *An Anatomy of Sections 2–201 and 2–202 of the Uniform Commercial Code (The Statute of Frauds and the Parole Evidence Rule),* 4 B.C. Ind. & Com.L.Rev. 381, 385 (1963).

Some courts paraphrase this requirement by stating that the writing must be sufficient to *bind* the sender. *E. g. Continental-Wirt Electronics Corp. v. Sprague Electric Co.,* 329 F.Supp. 959, 965 (E.D.Pa.1971); *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.,* 396 Pa. 506, 152 A.2d 472, 475 (1959); *Nelson v. Union Equity Co-Operative Exchange,* 536 S.W.2d 635, 637 (Tex.Ct.Civ.App.1976). Although the context of the statement usually indicates that the courts only intend to require the writing to satisfy the requirements of UCC § 2–201(1) so that it is sufficient against the sender (see note 16 and accompanying text, *infra* ), the paraphrase is technically inaccurate and perhaps even misleading. The merchant receiving the confirmatory writing is not bound by its terms. A writing under section 75–2–201(1) or a confirmatory writing under section 75–2–201(2) has only one legal effect. Under section 75–2–201(1) the party who signed the writing is denied the statute of frauds defense. *See* 3 Bender's UCC Service, *supra* note 3, § 2.04[1] at 2–47. Under section 75–2–201(2) the receiving merchant who does not timely give written notice of objection is denied the statute of frauds defense. *See* notes 9–11 and accompanying text, *supra.*

16. *See Doral Hosiery Corporation v. Sav-A-Stop, Inc.,* 377 F.Supp. 387, 389–90 (E.D.Pa. 1974) (writings do not satisfy UCC § 2–201(2) because they contain no quantity terms); *A & G Construction Co. v. Reid Brothers Logging Co.,* 547 P.2d 1207, 1216 (Ala.1976) (writing is sufficient against sender because it meets three requirements of UCC § 2–201(1)); *Evans Im-*

*plement Co. v. Thomas Industries, Inc.,* 117 Ga.App. 279, 160 S.E.2d 462, 463 (1968) (writing not sufficient against sender because not signed); *Azevedo v. Minister,* 86 Nev. 576, 471 P.2d 661, 665 (1970) (quoting UCC § 2–201, Comment 1, court implies writing under UCC § 2–201(2) must satisfy three requirements of UCC § 2–201(1)); 1 R. Anderson, *supra* note 10, § 2–201:51 at 283–84; Comment, *supra* note 15, at 385 (refers to UCC § 2–201(1) to decide if writing is sufficient against the sender).

17. 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–68; W. Hawkland, *supra* note 6, at 37; *see* UCC § 2–201, Comment 3 (the party relying on the confirmatory writing has the burden of showing that the oral contract was made *prior* to the writing).

18. 1 R. Anderson, *supra* note 10, § 2–201:51 at 284; *see Doral Hosiery Corporation v. Sav-A-Stop, Inc.,* 377 F.Supp. 387, 389 (E.D.Pa.1974).

19. UCC § 2–201, Comment 1, *quoted with approval in Doral Hosiery Corporation v. Sav-A-Stop, Inc.,* 377 F.Supp. 387, 389 (E.D.Pa.1974), *in Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.,* 396 Pa. 506, 153 A.2d 472, 476 (1959), *and in Azevedo v. Minister,* 86 Nev. 576, 471 P.2d 661, 666 (1970).

Perdue cites two cases in support of its argument that the confirmatory writing must refer to an oral contract. *Arcuri v. Weiss,* 198 Pa. Super. 506, 184 A.2d 24 (1962) did not involve UCC § 2–201(2). The court decided in that case that a writing did not satisfy UCC § 2–201(1) because it used the word "Tentative" in describing the purchase and the deposit made for the purchase. *Id.* at 26. The court did not hold that the writing must specifically refer to an oral contract. It did hold that the language in the writing did not satisfy the requirement that there be "some writing sufficient to indicate that *a contract for sale has been made.*" *Id.* (emphasis in original). The other case Perdue relies on is *John A. Wickersham Engineering & Construction, Inc. v. Arbutus Steel Co.,* 1 UCC Rep.Serv. 49 (Pa.Ct.C.P.1962). Although the court does note that there was no specific

The writing does not have to be in any particular form [20] and memoranda in a variety of forms have qualified as a confirmatory writing under UCC § 2–201(2).[21]

■ Number 3384 (Appendix A) is a pre-printed form containing blank spaces where information pertaining to each purchase may be inserted. Printed at the top of the form in large capital letters are the words "CONFIRMATION OF PURCHASE". The last sentence on the front side of No. 3384 reads: "The terms and conditions of the reverse side of this Confirmation are an integral part of this order." Printed on the reverse side are various terms including certain responsibilities of the buyer and the seller. On the front of the form, certain blank spaces have been filled in to provide the following information: The form is "confirming to Perdue Farms", the buyer is Motts, Inc., the seller is Perdue Farms, the date of the form is October 30, 1975, the items being purchased are fresh roasters, 1500 boxes are purchased, the unit price is $.50 per cwt., delivery is by "pick-up", and it is signed by B. J. Crawford.

In order for No. 3384 to be "sufficient against the sender" it must satisfy the requirements of section 75–2–201(1). As listed in *Derden v. Morris*, 247 So.2d 838, 839 (Miss.1971), these requirements are (1) the writing must evidence a contract, (2) the writing must be signed by Motts, and (3) the writing must specify a quantity.

Number 3384 clearly meets the second and third requirements. The writing is signed by B. J. Crawford, identified in an affidavit filed by Motts as its Vice-Presi-

dent for Procurement. The quantity of roasters purchased is indicated. Number 3384 must also "evidence a contract" or in the words of section 75–2–201(1), it must "indicate that a contract for sale has been made." The court finds that it satisfies this requirement. The tenor of the form is that it is confirming some agreement previously made by the parties. The use of the word "order" in the last sentence on the front of No. 3384, does not change the character of the writing from one that is ostensibly confirming a transaction to one that is making an offer to purchase. The word "order" is used to express an accomplished fact, that is, to describe the transaction allegedly made by the parties. The court does not believe "order" is used to convey an offer to buy. The court finds that No. 3384 satisfies the requirements of section 75–2–201(1) so that Motts is denied the statute of frauds as a defense thereby making No. 3384 "sufficient against the sender".

Although No. 3384 is dated October 30, 1975, Perdue has not shown any facts which would suggest that the No. 3384 was drafted prior to the time that the oral agreement was alleged to have been made. The court believes that No. 3384 affords a basis for believing that the oral testimony rests on a real transaction, which was made prior to the drafting of the writing. The court finds that the writing was made in confirmation of an oral transaction.

Having made these findings, the court holds that No. 3384 qualifies as a confirmatory writing under section 75–2–201(2).

reference to a prior oral contract, *id.* at 52, it later finds that the writing did not indicate that a contract for sale was made. The nature and character of the writing in *Wickersham* is distinguishable from No. 3384. However, to the extent that *Wickersham* appears to hold that the writing must *bind* the sender and must refer to an oral agreement, the court believes it is wrong. See 6B Pt. 2 Bender's UCC Service, W. Willier & F. Hart, UCC Reporter-Digest, § 2–201 at 2–186 to 187 (1977).

**20.** 1 R. Anderson, *supra* note 10, § 2 201:51 at 284.

**21.** *Automotive Spares Corp. v. Archer Bearings Co.*, 382 F.Supp. 513, 515 (N.D.Ill.1974) (invoice); *A & G Construction Co. v. Reid Brothers Logging Co.*, 547 P.2d 1207, 1215 (Ala.1976) (letter); *Azevedo v. Minister*, 86 Nev. 576, 471 P.2d 661, 664–665 (1970) (periodic accountings); *Reich v. Helen Harper, Inc.*, 3 UCC Rep. Serv. 1048, 1049 (New York City Civ.Ct.1966) (Document called Rates Confirmation); *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co.*, 396 Pa. 506, 153 A.2d 472, 474 n. 4 (1959) (Purchase Order and Letter); *Nelson v. Union Equity Co-Operative Exchange*, 536 S.W.2d 635, 637 (Tex.Ct.Civ.App.1976) (Pre-printed form).

b. Did Perdue receive No. 3384?

To prove that Perdue received No. 3384, Motts relies on the presumption that a correctly addressed letter, which is properly placed in the custody of the United States Mail with the correct amount of postage, is presumed to have been delivered to the addressee.[22]

Motts alleges that after the October 30, 1975, contract was made, No. 3384 was mailed postage prepaid through the United States Mail to Perdue at its usual mailing address and that Perdue received it. In support of this allegation the joint affidavit of Mr. B. J. Crawford, Motts' Vice-President for Procurement and Ms. Sheila Smith, Motts' Accounts Payable Clerk, has been filed wherein the affiants state that on either October 30, or October 31, 1975, No. 3384 was mailed to Perdue through the United States Mail, that the envelope was addressed to Perdue at its usual mailing address, that the postage for the envelope was prepaid, that Motts' return address was printed on the envelope and that the envelope has not been returned to Motts. Motts appears to have alleged sufficient facts to invoke the presumption.[23]

Perdue argues that the use of the words "received" and "receiving" in section 75–2–201(2) and the definition of "receives" in Miss.Code Ann. § 75–1–201(26) (1972) require that Motts show that Perdue actually received No. 3384. Perdue contends that where proof of actual receipt is required, the presumption relied upon by Motts does not apply.

In the alternative Perdue argues that if the presumption is applicable, the three affidavits filed by Perdue clearly overcome the presumption and conclusively prove that Perdue did not receive No. 3384. The affidavits were made by Geoffry J. Arnold, Perdue's Credit Manager, James R. Small-wood, Perdue's Sales Manager and Terrence N. Conway, Perdue's Treasurer and Vice-President and they make identical assertions. Each affiant states that neither he nor any of Perdue's other employees received No. 3384, had ever seen No. 3384 prior to the filing of the motion for summary judgment or had any reason to know of the content of No. 3384.

For the reasons which follow the court finds that neither argument is well taken.

Section 75–2–201(2) and the definitions in section 75–1–201(26) do not prescribe any particular method for proving receipt of a confirmatory writing. Section 75–1–201(26) reads

(26) A person "notifies" or "gives" a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person "receives" a notice or notification when

(a) it comes to his attention; or

(b) it is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications.

The official comment to this subsection, UCC § 1–201, Comment 26, reads:

[Notifies] is the word used when the essential fact is the proper dispatch of the notice, not its receipt. Compare "Send". When the essential fact is the other party's receipt of the notice, that is stated. The second sentence states when a notification is received.

The definition for "receives" in section 75–1–201(26) may not even be applicable to a confirmatory writing under section 75–2–201(2) because section 75–1–201(26) defines when a "notice" or "notification" is re-

---

**22.** McCormick's Handbook of the Law of Evidence § 343 at 807–08 (2d ed. E. Cleary, ed. 1972) [hereafter cited as Law of Evidence]; 1 J. Wigmore, A Treatise on the Anglo-American System of Evidence § 95 (3d ed. 1940) [hereafter cited as Wigmore on Evidence].

For a discussion of presumptions, their operation and effect, see Law of Evidence, *supra* at

§§ 342–43, 345; 9 Wigmore on Evidence, *supra*, at § 2491.

**23.** *See Threatt v. Threatt,* 212 Miss. 555, 54 So.2d 907, 908–09 (1951); Law of Evidence, *supra* note 22, § 343 at 807–08; 1 Wigmore on Evidence, *supra* note 22, § 95 at 524.

ceived. "Notice" and "notification" have specific meanings when used in the Code, Miss.Code Ann. § 75–1–201(25), and do not have to be in written form. *See GAC Credit Corp. v. Small Business Administration,* 323 F.Supp. 795, 798, (W.D.Mo.1971) (telephone conversation was notification under UCC § 9–312). Under section 75–2–201(2) there must be a writing. However, assuming that the definition for "receives" in section 75–1–201(26) is applicable to section 75–2–201(2), the definition does not dictate how Motts is to prove that Perdue received No. 3384. "The Code does not regulate the manner of proof of giving or receiving notice. The prior local law and rules of evidence therefore continue." [24] The cases cited by Perdue do not indicate that under Mississippi law the presumption of receipt by mailing could not be used to prove that a notice or a notification was received, nor do they imply that the presumption could not be used to prove receipt of a confirmatory writing.

But Perdue argues that if the drafters of the Code had intended for a party to be able to use the presumption to prove receipt of a confirmatory writing, the subsection would require that a writing in confirmation be "sent" instead of requiring that it be "received" within a reasonable time. An examination of the definition for "send" and the effect of substituting "sent" for "received" in section 75–2–201(2) reveals the fallacy of this argument.

"Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending.

Miss.Code Ann. § 75–1–201(38) (1972).

If section 75–2–201(2) only required that a writing in confirmation be "sent" within a reasonable time the presumption of receipt by mailing would not be needed because the facts which a party must prove to invoke the presumption, are sufficient to also prove "sending".[25] To invoke the presumption, a party must show that a correctly addressed envelope bearing a return address and having the proper postage was properly deposited in the United States Mail and was not returned. These same facts are also sufficient to prove that a writing was "sent". Thus, Perdue's argument that the word "sent" instead of "received" would have been used if the drafters of the Code had intended for the presumption to be available is clearly wrong because if "sent" were used the presumption would not be needed.

Using the word "sent" instead of "received" would also change the character of the section. Section 75–2–201(2) in its present form clearly contemplates receipt of the confirmatory writing by the other merchant as a prerequisite to the use of the writing to satisfy the statute of frauds. Substituting "sent" for "received" would remove that requirement. "Send" carries no connotation of receipt and to prove that there has been a proper sending it is not necessary that receipt be proved.[26]

 In summary the court finds that Perdue has not shown that under section 75–2–201(2) Motts cannot rely on the presumption to prove that No. 3384 was received by Perdue. The court decisions dealing with the issue of how to prove receipt indicate that a party can prove receipt of a confirmatory writing through means other than by direct proof of actual receipt.[27] To

24. 1 R. Anderson, *supra* note 10, at § 1–210:84.

25. *See Leasing Associates, Inc. v. Slaughter & Son, Inc.,* 450 F.2d 174, 179 n. 5 (8th Cir. 1971).

26. 1 R. Anderson, *supra* note 10, at §§ 1–201:117 to :124.

27. *See Tabor & Co. v. Gorenz,* 43 Ill.App.3d 124, 356 N.E.2d 1150, 1154–55 (1976) (presumption of receipt by mailing and office custom related to mailing support jury's finding that writing was received); *Nelson v. Union Equity Co-Operative Exchange,* 536 S.W.2d 636–637 (Tex.Ct.Civ.App.1976) (Although re-

limit the method of proving receipt by requiring the sending merchant to show by direct proof that the other merchant actually received the confirmatory writing might limit the usefulness of section 75–2–201(2) and might discourage the use of confirmatory writings because a merchant usually would not be able to present such proof.[28] Based on an examination of the section, the court decisions dealing with the issue of proving receipt and the effect that prohibiting the use of the presumption to prove receipt would have on the section, the court finds that Motts can rely on the presumption of receipt by mailing in order to prove that Perdue received No. 3384.

■ Perdue's alternative argument that its affidavits conclusively rebut the presumption and conclusively prove that No. 3384 was not received is without merit. Perdue's denial of receipt and the affidavits supporting the denial create an issue of material fact for the trier of fact to decide[29] but they do not provide a basis for summary judgment.

c. Did Perdue have reason to know the content of No. 3384?

Regarding the requirement that the recipient of the memorandum have reason to know of its content, it is the intent of this element to protect against the situation of using a confirmatory memorandum for the purpose of defeating the recipient's ability to plead the statute in defense, even though he might have no reason to anticipate receipt of such a document. The receipt of a spurious document would not burden the recipient with a risk of losing the defense under this standard of subsection (2). . . . [T]he "reason to know" element is best understood to mean that the confirmation was an instrument which should have been anticipated and therefore should have received the attention of appropriate parties. . . . Presumably, the criterion will also require the party relying on the merchant rule of subsection (2) to go forward with some evidence that the confirmation was a follow-up of some negotiation and deal between the parties.[30]

Although the court is not prepared at this time to hold that Motts has satisfied this requirement, it does find that Perdue has not shown that Motts cannot meet this requirement and therefor summary judgment is not warranted on this point.

2. Confirmation of Purchase No. 3422.

a. No. 3422 is not a writing in confirmation of the November 10, 1975, contract and sufficient against the sender.

■ Perdue argues that No. 3422 (Appendix B) does not qualify as a confirmato-

ceipt was denied, the court affirms trial court's finding that receipt was proved by showing business practice of mailing.); *cf. Pillsbury Co. v. Buchanan,* 37 Ill.App.3d 876, 346 N.E.2d 386, 388 (1976) (Court implies that presumption may be used to prove receipt of confirmatory writing).

The cases cited by Perdue do not support a different position. The court in *Dairyman's Cooperative Creamery Ass'n v. Leipold,* 34 Cal. App.3d 184, 109 Cal.Rptr. 753 (Ct.App.1973) implicitly recognized that the presumption may be used to prove receipt by stating that no evidence had been introduced to show that the writings "were placed in envelopes, correctly addressed to appellant, and properly mailed to him." *Id.* at 188, 109 Cal.Rptr. at 755. The court in *John H. Wickersham Engineering & Construction, Inc. v. Arbutus Steel Co.,* 1 UCC Rptr.Ser. 49 (Pa.Ct.C.P.1962) held that the sending merchant did not prove receipt be-

cause it had not been alleged in the complaint. The court did not discuss how to prove receipt in the event it is alleged. *Id.* at 54. Motts has alleged receipt. *Stahlman v. National Lead Co.,* 318 F.2d 388 (5th Cir. 1963) involved a different statute of frauds, Miss.Code Ann. § 264 (1942), *now codified as,* Miss.Code Ann. § 15–3–1 (1972).

**28.** 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–70; Comment, *supra* note 15, at 386.

**29.** Law of Evidence, *supra* note 22, at § 345; 9 Wigmore on Evidence, *supra* note 22, § 2519 at 431.

**30.** 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–69; *see* W. Hawkland, *supra* note 6, at 37; Comment, *supra* note 15, at 385.

ry writing under section 75–2–201(2) for the same reasons that were advanced against No. 3384. Except for the information inserted on the forms, No. 3384 and No. 3422 are identical. Number 3422 is dated November 10, 1975, and is signed by B. J. Crawford. It indicates that eight loads of roasters are purchased, that the roasters are to be picked up during the week of November 17, 1975, two loads per day on Monday, Tuesday, Wednesday and Thursday, that Motts is the buyer, that Perdue is the seller and that No. 3422 is "confirming to" Perdue.

Applying the standards described *supra*, the court finds that No. 3422 qualifies as a confirmatory writing under section 75–2–201(2).

b. Perdue gave timely written notice of objection to No. 3422.

■■■ Perdue admits receiving No. 3422 but claims that Motts cannot use it to satisfy the statute of frauds for the November 10, 1975, contract because Perdue timely gave written notice of objection to the content of No. 3422. To support that claim Perdue has filed an affidavit by Mr. Terrence N. Conway, Perdue's Treasurer and Vice-President. Mr. Conway states in the affidavit that No. 3422 was the only Confirmation of Purchase received from Motts, that it was received on November 18, 1975, in an envelope postmarked November 14, 1975, and that on November 25, 1975, he sent a Western Union Mailgram and mailed a letter to Motts wherein he acknowledged receipt of No. 3422 and informed Motts that "credit terms are not available because of your default [on] November 14, 1975," and

that "the previous proposed purchase was automatically cancelled." [31]

To maintain the right to assert the statute of frauds as a defense a party receiving a confirmatory writing must timely give written notice of objection. To be effective the written notice of objection must be given within 10 days of receipt of the confirmatory writing but it is not necessary that the other merchant receive it.[32]

Apparently section 75–2–201(2) is based on the premise that a merchant who is silent after receiving a confirmatory writing is acquiescing to the existence of the oral transaction. On the other hand, if a merchant receives a writing confirming an oral transaction which was never made, section 75–2–201(2) assumes the natural reaction is to promptly send a written notice unequivocally denying the existence of the oral transaction.[33]

Motts argues that Perdue's letter and mailgram do not deny the existence of the oral contract which No. 3422 confirms but instead the message shows that an oral transaction did exist.

One commentator states:

The objection, if it volunteers too much, may itself amount to a satisfactory memorandum. The simplest advice to follow would be to send a brief, concise statement acknowledging receipt of the purported confirmation and denying either its content or that any contract was entered. Avoid details and avoid argumentative comment. Even a lone reference to price may give basis for the confirming merchant to contend that there was in truth a bargain and that oral evidence should be admitted to prove it. The minimization of what is required for an effec-

---

31. The message in the mailgram and letter is identical and reads as follows:

On November 18, 1975, we received your Confirmation of Purchase mailed November 14, 1975, and back-dated November 10, 1975, purportedly referring to the purchase of eight (8) loads of fresh trim roasters. As our credit representative advised you orally November 14, 1975, and confirmed by our mailgram November 15, 1975, credit terms are not

available because of your default November 14, 1975. Since you have not responded to our invitation to make advance cash sales, the previous proposed purchase was automatically cancelled.

32. Miss.Code Ann. § 75–1–201(26) (1972); *see* 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–70 to –71.

33. Comment, *supra* note 15, at 386.

tive memorandum makes it exceedingly unwise to do otherwise than dispatch an unequivocal denial of all the content of the confirmation.[34]

Perdue's reference in the letter to unavailability of credit terms suggests that such terms may have been earlier agreed upon. The cancellation of a "previous proposed purchase" also suggests the existence of an earlier transaction because a transaction cannot be cancelled unless it was previously made. The tenor of the letter and mailgram is that of a disagreement over terms or an attempt to cancel a previous agreement because of the occurrence of subsequent events. However, section 75–2–201(2)

> does not provide for the rejection of an oral contract as such, but sets forth a way to object to a written confirmation of an oral contract and by doing so, to secure the protection of the statute of frauds.[35]

The court believes that if no oral transaction had occurred, Perdue, after receiving No. 3422, would have sent a short note denying the existence of such a purchase. The letter and mailgram are not such a denial and do not qualify as a written notice of objection.

In summary with regard to Perdue's motion for summary judgment as to Count I of the counterclaim, the court finds (1) that No. 3384 and No. 3422 are confirmatory writings under section 75–2–201(2); (2) that Perdue has not shown that it did not receive No. 3384; (3) that Motts may rely on the presumption of receipt through mailing in order to prove that Perdue received No. 3384; (4) that Perdue has not shown that Motts cannot prove that Perdue had reason to know of the content of No. 3384; and (5) that under section 75–2–201(2), Perdue's letter and mailgram do not qualify as written notices of objections to the content of No. 3422.

Concerning the October 30, 1975, contract Motts must still show that the statute of frauds has been satisfied. If Motts is going to rely on section 75–2–201(2), it must show that all of the prerequisites of that subsection have been met. The court today only holds that No. 3384 qualifies as a confirmatory writing under section 75–2–201(2). Motts must show that the subsection's other prerequisites have been met. (See text accompanying n. 12, *supra*.) If Motts is able to show that it has met all of the prerequisites of section 75–2–201(2) and thereby show satisfaction of the statute of frauds, Motts still has the burden of proving that the October 30, 1975, contract was made and the terms of that contract. Although Motts might be permitted to use No. 3384 to prove the terms of the contract, the writing is not conclusive and Perdue will be allowed to introduce evidence to contradict Motts' evidence.

Concerning the November 10, 1975, contract, the court today finds that the statute of frauds has been satisfied by the sending of No. 3422. The court has found that No. 3422 qualifies as a confirmatory writing under section 75–2–201(2). The other prerequisites of section 75–2–201(2) have also been met. Perdue has not challenged Motts assertion that both parties are merchants. Perdue has admitted receiving No. 3422 and in light of that admission and under the facts as shown by the pleadings and affidavits, the court finds that Perdue had reason to know of the content of No. 3422. Perdue admits receiving No. 3422 within 8 days of the date the oral contract was allegedly made and the court finds this constitutes receipt within a reasonable time under section 75–2–201(2). Since the court has held that Perdue's mailgram and letter do not qualify as notice of objection under section 75–2–201(2) and since the court finds that Motts has met the prerequisite of

---

34. 3 Bender's UCC Service, *supra* note 3, § 2.04[2] at 2–78; *see* Comment, *supra* note 15, at 386–87; *cf.* W. Hawkland, *supra* note 6, at 37.

35. *Continental-Wirt Electronics Corp. v. Sprague Electric Co.*, 329 F.Supp. 959, 965 (E.D.Pa.1971).

section 75–2–201(2), the court holds that as to the November 10, 1975, contract, the statute of frauds has been satisfied.

■ Motts still has the burden of proving that the November 10, 1975, oral transaction occurred and the terms of that transaction. Although No. 3422 might be admissible to show the terms of the November 10, 1975, oral transaction, the terms contained therein are not binding on Perdue and Perdue will be allowed to present competent evidence to contradict Motts' evidence.

**B. Motion for Summary Judgment as to Count II.**

■ Perdue contends that summary judgment is warranted because the contract Motts relies on in Count II does not satisfy the statute of frauds. Other than Perdue's allegation that the contract does not satisfy the statute of frauds, the record contains no proof to that effect. The court finds that the facts as contained in the file do not warrant summary judgment on Count II.

An appropriate order will be entered.

APPENDIX "A"

## CONFIRMATION OF PURCHASE

№ 3384

( ✔ MOTT'S, INC., OF MISSISSIPPI

( ) PETE BROWN ENTERPRISES, Inc.

Confirming to _Perdue Farm_ Date _____ _10-30_ , 19_75_

NAME ADDRESS

Buyer _Motts Inc._

Seller _Perdue Farms_

Grower _____

Hauler _____

Approx. Head Price per CWT. Loading Date

Leghorn Hens _1500 pcs fresh Rooster_ , 50 _Pickup_

Breeder Hens _5/7_

Roosters _____

Fryers _____

Age _____

Floor _____ Cage _____

**Payment On** **Catching and Loading**

Farm Weight _____ Buyer _____ Seller _____

Less Condemned—Yes ( ) No ( ) Location of Farm _____

Plant Weight _____ _____

Less U.S.D.A. Condemned—Yes ( ) No ( ) Location of Scales _____

Less D. O. A.—Yes ( ) No( ) _____

D. O. A. Allowance _____%

Payment shall be mailed within _____business days (exclusive of Saturdays, Sundays and Legal Holidays) after the day of slaughter.

The terms and conditions on the reverse side of this Confirmation are an integral part of this order.

Signed __BJ Crawford__
 Buyer

# Responsibilities

**PRODUCER (SELLER:)**

1. Be present, or have an authorized representative present, at the time of loading.

2. Meet trucker at scales when load is weighed Weigh out load. Get head count as well as net weight.

3. Send Buyer *immediately* weight information.

4. Contact buyer *immediately* of any problem that may arise from purchase of fowl.

**BUYER:**

1. Make arrangements with seller (producer) for pick-up.

2. Remove birds from farm and get net weight of same.

3. Contact seller immediately of any problem that may arise from the purchase.

4. Send check and other documents to seller.

---

1 The goods, poultry products or live poultry, comprising each shipment or other delivery hereinafter made by the seller to ————————————

————————————, or to ———————————— - - ————————————'s order), at any destination specified, are as of the date of such shipment or delivery not adulterated within the meaning of any applicable law and have not been treated with any poisonous or deleterious chemical as defined in the Federal Insecticide, Fungicide and Rodenticide Act, other than those approved by the Federal Food and Drug Administration and under the limitations of the United States Department of Agriculture.

2 Furthermore, the goods, poultry products or live poultry, when delivered will contain no residues of any pesticide chemicals which is unsafe within the meaning of Section 408 (a) of the Federal Food, Drug and Cosmetic Act, as amended. The goods, poultry products or live poultry, may not be articles which may not under Section 404 of the Federal Food, Drug and Cosmetic Act, as amended, be introduced into interstate commerce.

3 In the case of poultry the seller certifies the poultry has not received drugs or feed additives or that all drugs and feed additives received by the poultry has been used in conformity with the feed or drug manufacturer's dosage, directions and withdrawal times.

4 In the case of live poultry (fowl, cox, broilers) the seller is selling clean products free from lice or mite bites, skin infections, cuts, bruises, sores, and free from adulterations and residues as covered in above paragraphs 1,2, and 3 Any levels above 75 percent of any combination of skin conditions causing down grading of product, prices will be adjusted by buyer based on grade obtained from product produced from such con ditions caused by the aforelisted defects The delivery of products by the seller on this purchase order and any deliveries made hereafter con stitutes a continuing guarantee of indemnity to buyer or the receiver at any destination of product so routed by buyer.

5 Any residue levels of pesticide chemicals, drugs or feed additives found above the residues authorized under Section 408 (a) and Section 404 of the Federal Food, Drug and Cosmetic Act as amended, the live poultry so found to be adulterated will be condemned and buyer will be reimbursed for any damages incurred, nor will buyer be obligated in any way to pay for such live poultry

APPENDIX "B"

# CONFIRMATION OF PURCHASE

N⁰ 3422

( ✓ ) MOTT'S, INC., OF MISSISSIPPI

( ) PETE BROWN ENTERPRISES, Inc.

Confirming to _Perdue Farms Inc_ Date _____ _Nov 10_, 19_75_

| | | |
|---|---|---|
| **NAME** | | **ADDRESS** |
| Buyer _Motts Inc._ | | _____ |
| Seller _Perdue Farms_ | | _____ |
| Grower _____ | | _____ |
| Hauler _____ | | _____ |

| Approx. Head | Price per CWT. | Loading Date |
|---|---|---|
| _3 Loads_ | | _Dock - Picking week of_ |
| Leghorn-Hens _Fresh Trim_ | .50 | _11-17-75_ |
| _Roosters_ | | _2 Loads each day_ |
| Breeder Hens _____ | ____ | |
| Roosters _____ | ____ | |
| Fryers _____ | ____ | Age _Mon, Tues, Wed & Thur._ |
| _____ | ____ | Floor _____ Cage _____ |

| Payment On | Catching and Loading |
|---|---|
| Farm Weight _____ | Buyer _____ Seller _____ |
| Less Condemned—Yes ( ) No ( ) | Location of Farm _____ |
| Plant Weight _____ | _____ |
| Less U.S.D.A. Condemned—Yes ( ) No ( ) | Location of Scales _____ |
| Less D. O. A.—Yes ( ) No( ) | _____ |
| D. O. A. Allowance _____% | |

Payment shall be mailed within _____business days (exclusive of Saturdays, Sundays and Legal Holidays) after the day of slaughter.

The terms and conditions on the reverse side of this Confirmation are an integral part of this order.

Signed _B.J. Crawford_
Buyer

# Responsibilities

**PRODUCER (SELLER:)**

1. Be present, or have an authorized representative present, at the time of loading.

2. Meet trucker at scales when load is weighed. Weigh out load. Get head count as well as net weight.

3. Send Buyer *immediately* weight information.

4. Contact buyer *immediately* of any problem that may arise from purchase of fowl.

**BUYER:**

1. Make arrangements with seller (producer) for pick-up.

2. Remove birds from farm and get net weight of same.

3. Contact seller immediately of any problem that may arise from the purchase.

4. Send check and other documents to seller.

1. The goods, poultry products or live poultry, comprising each shipment or other delivery hereinafter made by the seller to ————————

——————————, or to – ————— .. . ——————————'s order), at any destination specified, are as of the date of such shipment or delivery not adulterated within the meaning of any applicable law and have not been treated with any poisonous or deleterious chemical as defined in the Federal Insecticide, Fungicide and Rodenticide Act, other than those approved by the Federal Food and Drug Administration and under the limitations of the United States Department of Agriculture.

2. Furthermore, the goods, poultry products or live poultry, when delivered will contain no residues of any pesticide chemicals which is unsafe within the meaning of Section 408 (a) of the Federal Food, Drug and Cosmetic Act, as amended. The goods, poultry products or live poultry, may not be articles which may not under Section 404 of the Federal Food, Drug and Cosmetic Act, as amended, be introduced into interstate commerce.

3. In the case of poultry the seller certifies the poultry has not received drugs or feed additives or that all drugs and feed additives received by the poultry has been used in conformity with the feed or drug manufacturer's dosage, directions and withdrawal times

4. In the case of live poultry (fowl, cox, broilers) the seller is selling clean products free from lice or mite bites, skin infections, cuts, bruises, sores, and free from adulterations and residues as covered in above paragraphs 1,2, and 3. Any levels above 25 percent of any combination of skin conditions causing down grading of product, prices will be adjusted by buyer based on grade obtained from product produced from such conditions caused by the aforelisted defects. The delivery of products by the seller on this purchase order and any deliveries made hereafter constitutes a continuing guarantee of indemnity to buyer or the receiver at any destination of product so routed by buyer.

5. Any residue levels of pesticide chemicals, drugs or feed additives found above the residues authorized under Section 403 (a) and Section 404 of the Federal Food, Drug and Cosmetic Act as amended, the live poultry so found to be adulterated will be condemned and buyer will be reimbursed for any damages incurred, nor will buyer be obligated in any way to pay for such live poultry.

## ON MOTION TO RECONSIDER

This case is before the court for consideration of a motion filed by plaintiff Perdue Farms, Inc. (Perdue) which asks the court to reconsider its ruling and accompanying order of April 21, 1978 (hereafter Memorandum of Decision). Specifically, Perdue asks the court to reconsider Part II(A)(1)(b) of the Memorandum of Decision.

Part II(A) of the Memorandum of Decision dealt with that part of Perdue's summary judgment motion which sought dismissal of Count I of a counterclaim filed by defendant Motts, Inc. of Mississippi (Motts). Count I alleged that Perdue had breached an oral contract which Perdue made with Motts on October 30, 1975, and asked for damages for injuries Motts suffered as a result of the breach. Perdue argued in its summary judgment motion that Count I should be dismissed because the oral contract did not satisfy the statute of frauds found in Miss.Code Ann. § 75–2–201 (1972) and therefore was unenforceable.

Motts opposed the summary judgment motion and attempted to show that it had satisfied the statute of frauds by following the procedure established in section 75–2–201(2). Perdue noted that section 75–2–201(2) has several prerequisites which a merchant[1] must meet before he can rely on the procedure to satisfy the statute of frauds and Perdue argued in its summary judgment motion that Motts could not meet all of the prerequisites. After considering the file of this case and each party's argument, the court concluded that Perdue had not shown that under the undisputed material facts, Motts could not satisfy all of the prerequisites of section 75–2–201(2) and therefore the summary judgment motion was denied.

Part II(A)(1)(b) of the Memorandum of Decision deals with the provision in section 75–2–201(2) which requires the merchant

relying on section 75–2–201(2), to prove that the confirmatory writing was received by the other merchant within a reasonable time after the oral contract was made. Motts contends that it mailed Confirmation of Purchase No. 3384 (No. 3384) to Perdue to confirm the October 30, 1975, oral contract and that Perdue received it. To prove that Perdue received No. 3384, Motts relies on the presumption that a correctly addressed letter which is properly mailed and which is not returned undelivered to the sender, is presumed to have been delivered to the addressee (hereafter Presumption). See 459 F.Supp. at 18 n.22. Perdue denied receipt of No. 3384 and in its summary judgment motion argued that the Presumption was not relevant evidence and could not be used to prove receipt of a confirmatory writing because section 75–2–201(2) requires that receipt be shown by direct proof of actual receipt. After reviewing section 75–2–201(2), related provisions of the Uniform Commercial Code and court decisions from other jurisdictions dealing with the issue of receipt, this court rejected Perdue's argument, concluded that Motts could rely on the Presumption when attempting to prove that Perdue received No. 3384 and denied the motion for summary judgment.

In its motion to reconsider, Perdue argues that the Mississippi Supreme Court held in a recent decision, *Wholesale Materials Co. v. Magna Corp.*, 357 So.2d 296 (Miss.1978), that the proper method of proving receipt of a confirmatory writing is to show that the confirmatory writing was mailed via Registered Mail—Return Receipt Requested. Perdue contends that the Mississippi Supreme Court's holding implicitly rejects this court's ruling that Motts may rely on the Presumption when attempting to prove that Perdue received No. 3384. Since *Wholesale Materials Co.* is controlling in this diversity action, Perdue asks the court to withdraw Part II(A)(1)(b) of its Memorandum of Decision and to substitute a rul-

---

1. Throughout this Memorandum of Decision the term "merchant" is used in accordance with the definition found in Miss.Code Ann. § 75–2–104(1) (1972).

ing and order providing that the statute of frauds applies to the October 30, 1975, oral contract, sustaining Perdue's motion for summary judgment as it pertains to that contract and dismissing that part of Count I of Motts' counterclaim which is based on the October 30, 1975, contract.

In *Wholesale Materials Co.* plaintiff Magna Corp., d/b/a Mississippi Steel (Mississippi Steel) brought suit against defendant Wholesale Materials Company (Wholesale) to collect an open account. Wholesale filed a counterclaim based on an oral contract allegedly made by the parties. Wholesale relied on the procedure in section 75–2–201(2) to satisfy the statute of frauds and claimed it had mailed a confirmatory letter[2] on April 20, 1972, to Mississippi Steel.

As to the mailing of the letter, Wholesale's president testified:

"We have a regular system like all other companies would have. We have the secretaries type the letters out, then they bring them in for my signature and they place them into envelopes and mail them out."

357 So.2d at 297.

No other testimony or other evidence was introduced by Wholesale to prove that Mississippi Steel received the confirmatory letter. 357 So.2d at 298. Mississippi Steel's vice-president "testified positively and unequivocally that he never received the letter of April 20, 1972, . . ." 357 So.2d at 298. On the basis of this evidence the trial court, sitting without a jury, found that Wholesale had not proved that Mississippi Steel received the confirmatory letter. Since Wholesale had not proved receipt by Mississippi Steel of the confirmatory letter, the court ruled that Wholesale could not rely on the procedure in section 75–2–201(2) to satisfy the statute of frauds and since Wholesale had not proved that the oral contract satisfied the statute of frauds, the trial court ruled that the contract was not enforceable.

Wholesale appealed and the issue before the Mississippi Supreme Court was whether the trial court had "erred in holding that there was no confirmatory memoranda received by Mississippi Steel, and that the provisions of the Statute of Frauds of the Uniform Commercial Code [Miss.Code Ann. sec. 75–2–201 (1972)], applied and made unenforceable the alleged oral contract . . ." 357 So.2d at 297.

After reviewing the record, the Mississippi Supreme Court affirmed the trial court's finding and stated:

Under Section 75–2–201(2), it is imperative that the writing in confirmation of an oral contract be received by the party against whom its terms will be asserted, so that the party will have notice and an opportunity to object if the terms were not as stated in the writing.

. . . . .

Since failure to object in writing within ten days would estop the party to whom the confirmation writing is addressed, it becomes absolutely necessary that such party receive the confirmatory writing. It would be a simple matter for the sender of the confirmatory writing to mail it by Registered Mail—Return Receipt Requested. That was not done in this case, and no proof was adduced that [Mississippi Steel] received the letter of April 20, 1972.

357 So.2d at 298–99.

---

**2.** The opinion in *Wholesale Materials Co.* mentions two writings that could be considered confirmatory writings under section 75–2–201(2): (1) The letter dated April 20, 1972, from Wholesale's president to Mississippi Steel's vice-president, 357 So.2d at 297–98, which is discussed above, and (2) a purchase order mailed by Wholesale's president, 357 So.2d at 298. Since no evidence was introduced at the trial of the case to show that Wholesale mailed or that Mississippi Steel received the purchase order, this court will not discuss the purchase order.

■ Although the Mississippi Supreme Court commented that proof of receipt might have been available if Wholesale had mailed the confirmatory letter to Mississippi Steel via Registered Mail—Return Receipt Requested, the court does not believe that this comment constitutes a holding that receipt may be proved only by such evidence nor does this court believe that the comment implicitly rejects this court's holding that Motts may rely on the Presumption to attempt to prove that Perdue received No. 3384. In *Wholesale Materials Co.*, the Mississippi Supreme Court was not asked to decide whether receipt of a confirmatory writing must be proved by any particular type of evidence, such as by a showing that the writing was mailed via Registered Mail—Return Receipt Requested, nor was the Mississippi Supreme Court asked to decide whether the Presumption is relevant evidence for the purpose of proving that a merchant received a confirmatory writing. The issue before the Mississippi Supreme Court was whether the trial court erred when it ruled that the evidence introduced by Wholesale was insufficient to support a finding that Mississippi Steel received the confirmatory writing. After reviewing the testimony of Wholesale's president, which was the only evidence introduced by Wholesale to prove that Mississippi Steel had received the confirmatory letter, the Mississippi Supreme Court concluded that the trial court's ruling was correct and affirmed it. This court believes that the trial court's ruling and the Mississippi Supreme Court's affirmance are based only on a finding that Wholesale did not carry its burden of proving by a preponderance of the evidence that Mississippi Steel received the confirmatory letter. Nothing in the decision indicates that the trial court or the Mississippi Supreme Court were addressing the issue of whether any particular type of proof was competent or relevant as evidence and therefore this court believes that the decision does not directly or implicitly hold that the Presumption upon which Motts relies is not relevant or competent evidence for the purpose of showing that a merchant received a confirmatory writing.

As a general practice, merchants do not mail their confirmatory writings via Registered Mail—Return Receipt Requested. *See* 3 Bender's UCC Service, R. Dusenberg & L. King, *Sales and Bulk Transfers under the Uniform Commercial Code* § 2.04[2] at 2–70 (1975) (hereafter 3 Bender's UCC Service). Section 75–2–201(2) was drafted to allow a merchant to use confirmatory writings to satisfy the statute of frauds and thereby to encourage the business practice of sending confirmatory writings to confirm the terms of oral contracts. W. Hawkland, *Sales and Bulk Sales*, 28 (1958); *see* 3 Bender's UCC Service, *supra*, § 2.04[2] at 2–72; Memorandum of Decision at 9–10. To preclude the use of the presumption and to limit the manner of proving receipt by requiring that the merchant show by direct evidence, such as mailing via Registered Mail—Return Receipt Requested, that the confirmatory writing was actually received would seriously limit the utility of section 75–2–201(2) and would be contrary to the intent and purpose of the section, *see* 459 F.Supp. at 20 & n.28, and absent a specific finding by the Mississippi Supreme Court that the Presumption is not competent evidence for the purpose of proving receipt of a confirmatory writing, this court is unwilling to impute such a result to the Mississippi Supreme Court's ruling in *Wholesale Materials Co.*

An appropriate order will be entered.