357 So.2d 296 (1978)
WHOLESALE MATERIALS COMPANY, INC.
v.
MAGNA CORPORATION, d/b/a Mississippi Steel.
No. 50152.
Supreme Court of Mississippi.
March 29, 1978.
Rehearing Denied April 26, 1978.
J.B. Van Slyke, Jr., Hattiesburg, L. Arnold Pyle, Jackson, for appellant.
Tighe & Tighe, B. Stirling Tighe, Jackson, for appellee.
Before SMITH, ROBERTSON and LEE, JJ.
ROBERTSON, Justice, for the Court:
On February 10, 1975, Magna Corporation, doing business as Mississippi Steel, filed suit on open account in the Circuit Court of Forrest County against Wholesale Materials Company, Inc., for $59,668.95, the balance due on sales of steel reinforcing rods from July, 1972, to October, 1974.
Wholesale answered and counter-claimed, alleging that it had overpaid Mississippi Steel in the sum of $17,902.05.
After a full trial, the court, sitting as judge and jury, on October 15, 1976, rendered *297 judgment for Mississippi Steel, for $69,799.47, being $59,668.95 principal and $10,130.52 interest.
Wholesale has appealed, assigning as error that the court erred in holding that there was no confirmatory memoranda received by Mississippi Steel, and that the provisions of the Statute of Frauds of the Uniform Commercial Code [Miss. Code Ann. sec. 75-2-201 (1972)], applied and made unenforceable the alleged oral contract to sell steel reinforcing bars at fixed prices to Wholesale. Section 75-2-201 provides in part:
"(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
"(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received." [Emphasis added].
Appellant contended that about April 19, 1972, J.W. McLaughlin, its president, met with W.J. Califf, Jr., vice-president of sales of appellee, at the Sun-n-Sand motel in Jackson, Mississippi, and at that time entered into an oral contract providing that appellee would sell and deliver to appellant about 2,900,000 pounds of steel reinforcing bars at a fixed base price of $5.90 per hundred pounds until December 31, 1972, and at a fixed base price of $6.35 per hundred pounds after January 1, 1973.
McLaughlin testified that he, for the appellant, wrote a letter of confirmation on April 20, 1972, to Mississippi Steel. McLaughlin explained appellant's office procedure:
"We have a regular system like all other companies would have. We have the secretaries type the letters out, then they bring them in for my signature and they place them into envelopes and mail them out."
That letter reads:
 [Letterhead of WHOLESALE
 MATERIALS COMPANY]
 HATTIESBURG, MISSISSIPPI
 April 20, 1972
 Mississippi Steel Corporation
 P.O. Box 5780
 Pearl Branch
 Jackson, Mississippi 39208
 Attention: Mr. Bill Califf
Dear Bill:
To confirm your proposal concerning the Empire Louisiana Bridge Project, I am listing below, the essential cost, and profit potential that we agreed to yesterday at the Sun & Sand, for our file.
First, we are paying $5.90 base plus equalized freight of 27 [cents], plus the standard size extras, and will pay this price until December 31, 1972, after January 1, 1973, then the base price could go up to $6.35 plus equalized freight and present size extras but no higher throughout the completion of the job.
After our discussions yesterday at the Sun & Sand we are seriously considering joining you and Mississippi Steel Corporation in this venture, particularly after your agreement to furnish exact cut length bars off the mill on quantities of 40,000 lbs. or more of a size and length. This would cut our fabricating cost tremendously, plus almost eliminate drops and speed up our bending.
I know you want to sell this large tonnage and Wiley as your director would like to favor you with the business with the market the way it is, however, he said to provide him with a breakdown, so that he could be sure that:

*298 (1) We could work with you and furnish this job at a profit to Wholesale Materials Co., Inc. and
(2) That you and Wholesale Materials Co., Inc. could furnish materials as needed on the job.
these are his only concerns.
With sizes 3 thru 11 being used, you recommend that we use #5 or #6 bar as a price build-up, for average size extra. Now, as you outlined, we are forwarding him our cost as follows:

 To December After January
 31, 1972 1, 1973 
 Base $ 5.90 $ 6.35
Equalized Freight .23 .23
Less Competitive
 Allowance (.11) (.11)
Size Extra .70 .70
Drops .10 .10
Freight to Empire .30 .30
Fabrication &
 Handling .60 .60
 ______ ______
 $ 7.72 $ 8.17

I agree with you that our total cost should run (with luck) less than $8.00 cwt. This should give Wholesale Materials Co., Inc. a minimum margin of $29,000.00 on the job after final quantities are completed.
The rebars you agree to furnish for this project will be the estimated plan quantities or actual quantities whichever is greater, after approved bar lists have been received.
Very truly yours,
 WHOLESALE MATERIALS CO., INC.
 /s/ J.W. McLaughlin
 J.W. McLaughlin,
 President
 JWM:yl
No further testimony was adduced as to the actual mailing of this letter.
McLaughlin also testified that he prepared a comprehensive purchase order on July 27, 1972, addressed to Mississippi Steel and embodying the terms of the oral contract, and that a copy of the purchase order was placed in the file of the Empire, Louisiana, project of W.R. Fairchild Construction Company. No testimony was adduced as to the mailing of the purchase order.
Califf testified positively and unequivocally that he never received the letter of April 20, 1972, nor the purchase order of July 27, 1972.
Appellant and appellee had dealt with each other for at least ten years. The usual procedure was for Wholesale to place orders by telephone, and Mississippi Steel would ship out the orders and bill Wholesale at prevailing market prices. This was the procedure followed on the Empire, Louisiana, job.
From July, 1972, until April 2, 1973, orders shipped to Wholesale were billed to it at $5.79 base price per hundred pounds, and from April 3, 1973, until July 17, 1973, shipments of steel reinforcing bars were billed to Wholesale at $5.90 base price per hundred pounds. On billings after July 17, 1973, the base price was $6.35 per hundred pounds.
On September 7, 1973, the prevailing market price went above $6.35 per hundred pounds, and appellee's prices, as reflected in its billings of appellant, went up accordingly. McLaughlin testified that he protested over the phone to Cotton Caldwell, president of Mississippi Steel, and that Caldwell told him that the price of steel had gone up and, in order to stay in business, Mississippi Steel had to raise prices.
Later McLaughlin protested to Califf, and finally asked for a hearing before the Board of Directors of Mississippi Steel. Caldwell turned down McLaughlin's request, on the basis that this was a managerial or administrative decision, to be made by the officers of the corporation, and not by the Board of Directors. Finally when the Empire, Louisiana, job was concluded in October, 1974, and Wholesale refused to pay the balance due according to the appellee's figures, suit was filed on February 10, 1975.
Under Section 75-2-201(2), it is imperative that the writing in confirmation of an oral contract be received by the party against whom its terms will be asserted, so that that party will have notice and an opportunity to object if the terms were not as stated in the writing.
*299 Before section 75-2-201 supplemented the old Statute of Frauds as to dealings "between merchants", it was required that:
"[T]he promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing." Miss. Code Ann. sec. 15-3-1 (1972). (Emphasis added).
Since failure to object in writing within ten days would estop the party to whom the confirmation writing is addressed, it becomes absolutely necessary that such party receive the confirmatory writing. It would be a simple matter for the sender of the confirmatory writing to mail it by Registered Mail  Return Receipt Requested. That was not done in this case, and no proof was adduced that appellee received the letter of April 20, 1972.
We think that the trial court was correct when it found that:
"11. There were no confirmatory memoranda between the parties under which they made any agreement with respect to sale of reinforcing steel bars or any confirmatory memoranda otherwise setting forth in a writing an intention by the parties as a final expression of any agreement between them.
"12. There was no course of dealing or usage of trade between or with respect to the parties indicating that Defendant had bought from Plaintiff and Plaintiff had sold to Defendant under oral contracts steel reinforcing bars at a fixed and certain price for periods prior to July 1972.
"13. Plaintiff never received any written purchase order from Defendant with regard to the purchase and sale of steel reinforcing bars in this action and thereby there was no acceptance of any offer by Plaintiff set forth in any written purchase order by virtue of the sale, delivery and shipment of reinforcing steel bars by Plaintiff to Defendant."
Not having complied with the requirements of Section 75-2-201(2) to remove the alleged oral contract from the statute of frauds, we find, as did the trial court, that the statute of frauds applied.
The judgment of the lower court is, therefore, affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.