Thomas L. ROBERTS,
Plaintiff-Appellant,

v.

SOUTHERN WOOD PIEDMONT COMPANY and Bryan Inspection Agency, Inc., Defendants-Appellees,

v.

W. E. ROBERTS, Counter
Defendant-Appellant.

No. 77–2877
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 13, 1978.

---

*Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

W. S. Murphy, Lucedale, Miss., for plaintiff-appellant.

Thomas Tyner, Hattiesburg, Miss., Harold W. Melvin, Laurel, Miss., for defendants-appellees.

Before MORGAN, CLARK and TJOFLAT, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Thomas Roberts sued Bryan Inspection Agency and Southern Wood Piedmont for breach of an oral contract. Southern responded with a counterclaim for money due on a promissory note. After both sides had presented their evidence, the trial court directed a verdict against Roberts both on the suit and on the counterclaim. The trial court ruled that the statute of frauds barred the action on the oral contract and rejected Roberts' arguments that there had been a material change in the note which discharged his liability. Roberts has appealed from both rulings. We affirm.

In October 1973, Thomas Roberts was nearing the completion of a sawmill when he was contacted by Don Reddish on behalf of Bryan Inspection Agency, a broker of crossties. After some discussion, Roberts and Reddish orally agreed that Bryan would purchase the sawmill's entire output of railroad crossties. That agreement was never reduced to writing. To enable Roberts to complete the sawmill rapidly Reddish promised that Bryan would advance $7,000, to be repaid out of the proceeds from the sale of crossties to Bryan for Southern. In consideration of the loan,

Roberts and his father signed a promissory note to Bryan which was later assigned to Southern. Reddish witnessed the signatures. During the first year of the sawmill's operation Roberts sold crossties to Southern and repaid almost half of the note's principal. After that year the market for crossties became progressively worse and Southern's acceptance of deliveries became irregular. Roberts testified that when Southern finally refused to accept any further deliveries, he was forced to close his mill. He sued to recover lost profits and for other damages.

The Mississippi statute of frauds provides:

> An action shall not be brought whereby to charge a defendant or other party:
>
> .    .    .    .    .
>
> (d) Upon any agreement which is not to be performed within the space of fifteen months from the making thereof; . . unless . . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

Miss.Code Ann. § 15–3–1 (1972).

■ On appeal Roberts relies upon the promissory note to support his contention that the contract did not fall within the statute of frauds. First, he argues that the promissory note was a written memorandum of the contract. Second, he argues that because he could have repaid the loan within fifteen months it was an error not to permit the jury to decide the duration of the contract. The promissory note cannot be sufficient evidence of the contract because it does not contain the substantial terms of the contract. *See, e. g., Stahlman v. National Lead Company,* 318 F.2d 388, 395 (5th Cir. 1963); *Ludke Electric Company v. Vicksburg Towing Company,* 240 Miss. 495, 127 So.2d 851, 854 (1961). The note contains only the provisions for repayment; it mentions neither the agreement to purchase the entire output of the sawmill nor the price at which the ties would be purchased. Moreover, Roberts testified that the contract was to extend beyond the time required to repay the loan; on several occasions he said that the contract was to last as long as he owned the sawmill.

■ Roberts' belief as to the duration of the contract is the basis for another challenge to the trial court's ruling that the contract came within the statute of frauds. Under Mississippi law contracts for an indefinite period are terminable at will by either party upon giving reasonable notice to the other party. Such contracts have been held not to be within the statute of frauds. *See Hazell Machine Company v. Shahan,* 249 Miss. 301, 161 So.2d 618 (1964); *United States Finance Company v. Barber,* 247 Miss. 800, 157 So.2d 394 (1963). By contrast, contracts that are intended to last forever are not terminable at will and are within the statute of frauds. *Gerachi v. Sherwin-Williams Company,* 156 Miss. 36, 125 So. 410, 411 (1930). *See also Poole v. Johns-Manville Products Corporation,* 210 Miss. 528, 49 So.2d 891, 893 (1951). From Roberts' testimony it is clear that he believed that the contract would last "forever," or for as long as he was in the sawmill business. This case is therefore controlled by *Gerachi v. Sherwin-Williams Company, supra.* In *Gerachi* the parties orally contracted for a drug store to be the exclusive distributor for Sherwin-Williams products. The contract was "to endure forever, subject to the payment of indebtedness incurred thereunder." 125 So. at 411. That contract, the Mississippi Supreme Court concluded, fell within the statute of frauds and could not be the basis for an action. Since Roberts' contract to supply crossties was to last forever, it too cannot be the basis for an action. The district court therefore did not err in directing a verdict in favor of Bryan and Southern on the contract claim.

■ On the counterclaim for money due on the promissory note, Roberts contends that there was a material alteration which discharges his liability on the note. The alteration was the insertion of the numeral "8" into the blank space in the note following the words "with interest at the rate of." Roberts argues that the insertion was a

material alteration because he had not agreed to pay any interest. The testimony, however, disclosed that Roberts had said that he could not pay ten or twelve percent interest; he told Reddish that if he were to borrow the money it could only be at a rate of seven or eight percent. Roberts did not protest after receiving statements from Southern which showed both principal and interest due. In addition, the words of the promissory note indicated that the parties agreed to the payment of some interest. Thus the insertion of the numeral "8" was not a material alteration. *See Epstein v. Paskow & Epstein,* 4 U.C.C. Reporting Service 1066 (N.Y.Sup.Ct.1968).

■ The trial court awarded interest at six percent, the legal rate of interest on notes. Miss.Code Ann. § 75–17–1 (1972). Had the space in the note been left blank, the court was authorized to charge interest at the statutory rate. *See* Miss.Code Ann. § 75–3–118(d) (1972). Therefore, in light of the failure of the parties to agree upon a specific rate of interest, the court did not err in charging Roberts with interest at six percent.

AFFIRMED.