*983
 
 ALVIN B. RUBIN, Circuit Judge:
 

 In 1973, Alvin Skinner brought this class action on behalf of New Orleans customers of W. T. Grant, alleging violations of the Consumer Credit Protection Act and the Louisiana usury laws.
 
 [1]
 
 In 1975, Grant filed a Chapter XI petition leading to reorganization proceedings in the Southern District of New York. During those proceedings, the Bankruptcy Trustee assigned the company’s accounts receivable, including those of its New Orleans customers, to Federal Financial Corp., the appellee. Skinner, in turn, joined Federal Financial as a second defendant, alleging that Federal Financial had assumed Grant’s potential liability.
 

 Skinner appeals from the district court’s entry of summary judgment in favor of Federal Financial. The court held that the company did not assume Grant’s potential liability either by operation of law or under the terms of the contract. We agree with the district court that Federal Financial did not assume the potential liability by operation of law, but reverse the summary judgment and remand for further proceedings because the contract of sale provided that Federal took the accounts subject to counterclaims such as those asserted by Skinner and his class.
 

 I.
 

 In his original complaint, Skinner alleged that Grant had engaged in deceptive practices and imposed excessive finance charges in violation of the Consumer Credit Protection Act (the “Truth in Lending Act”), 15 U.S.C. § 1601
 
 et seq.,
 
 Regulation “Z” promulgated by the Federal Reserve Board pursuant to 15 U.S.C. § 1604,
 
 see
 
 12 C.F.R. § 226.1
 
 et seq.
 
 (1980), and the Louisiana usury laws, La.Rev.Stat.Ann. § 9:3501 (West 1951) and La.Civ.Code Ann. art. 2924 (West 1952). While this case was pending, Grant commenced Chapter XI proceedings. On October 18, 1976, Federal Financial Corp., then a 5-day old corporation, entered into a purchase agreement for the sale of all of Grant’s accounts receivable, including; those of Skinner and the other members of the potential class. The Bankruptcy Court authorized the sale on November 17, 1976. On October 1, 1977, Skinner amended his complaint to assert the class’s claims against Federal as assignee of the accounts receivable.
 

 Arguing that it had not assumed Grant’s potential liabilities, Federal Financial countered with a motion to dismiss for failure to state a claim under Fed.R.Civ.P. Rule 12(b)(6) or, in the alternative, a motion for summary judgment under Rule 56. The district court entered summary judgment in favor of Federal Financial, rejecting Skinner’s claim that Federal Financial assumed liability by operation of Section 115 of the Consumer Credit Protection Act, 15 U.S.C. § 1614; Section 68 of the old Bankruptcy Act (formerly codified at 11 U.S.C. § 108); the Louisiana law of compensation,
 
 see
 
 La. Civ.Code Ann. arts. 2207-08 (West 1952) or under the terms of Federal Financial’s purchase agreement with Grant.
 
 [2]
 
 Finding no just reason for delay, the district court certified this appeal under Fed.R.Civ.P. Rule 54(b), which provides for appeal when judgment is entered as to some but not all parties or claims.
 

 On appeal, Skinner challenges the Rule 54(b) certification as well as the district court’s decision on the merits. We turn first to the question of certification.
 

 II
 

 We may vacate the district court’s Rule 54(b) certification only if we find that the district court abused its discretion.
 
 *984
 

 Curtiss-Wright Corp. v. General Electric Co.,
 
 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980);
 
 Sears, Roebuck & Co. v. Mackey,
 
 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956);
 
 Kirtland v. J. Ray McDermott & Co.,
 
 568 F.2d 1166 (5th Cir. 1978). In
 
 Curtiss-Wright,
 
 the Supreme Court rejected the argument that Rule 54(b) certification should occur only in the “infrequent harsh case” and held that certification may be granted whenever “sound judicial administration” requires. 446 U.S. at 9, 100 S.Ct. at 1466, 64 L.Ed.2d at 12.
 

 Here, certification was patently in the interests of sound judicial administration. Since the proceedings against Grant have been stayed in the district court, it would be unjust to continue Federal Financial as a defendant for an indefinite period when its liability depends on an additional set of facts and legal theories and when the common predicate for liability shared with its co-defendant is not before the court on appeal.
 
 Curtiss-Wright
 
 suggests that certification should be allowed if the issues decided on this appeal are not likely to be raised by another party in a subsequent appeal and an early determination is not likely to prejudice that party’s rights.
 
 See
 
 446 U.S. at 7, 100 S.Ct. at 1465, 64 L.Ed.2d at 11. This appeal decides only whether Federal Financial assumed liability for Skinner’s potential claims. Because Grant could not contract away its statutory liability,
 
 [3]
 
 it cannot raise any assumption of liability by Federal Financial as a defense in a later appeal. For these reasons, we conclude that the district court did not abuse its discretion in granting Rule 54(b) certification.
 

 Ill
 

 Turning to the merits, we first consider Skinner’s contention that Grant’s right to payment on the accounts had already been offset, under Louisiana law, by the statutory penalties owed to members of the class before the assignment to Federal Financial occurred. Article 2209 of the Louisiana Civil Code describes the circumstances in which “compensation” of mutual debts occurs by operation of law:
 

 Compensation takes place only between two debts having equally for their object a sum of money, or a certain quantity of consumable things of one and the same kind, and which are equally liquidated and demandable.
 

 La.Civ.Code Ann. art. 2209 (West 1952).
 
 See Hartley v. Hartley,
 
 349 So.2d 1258 (La.1977).
 

 Skinner argues that, because the amount of the statutory penalties may be readily ascertained, the penalties and the contractual obligations to Grant are equally liquidated and demandable. Because the amounts owed by the class to Grant and the amount allegedly owed by Grant to the class are “capable of ascertainment by mere calculation or computation in accordance with established or accepted legal standards,” they may well be equally liquidated. See
 
 Olinde Hardware & Supply Co. v. Ramsey,
 
 98 So.2d 835, 843 (La.App.1957).
 

 Equally liquidated debts are not necessarily equally demandable. The Louisiana courts have held that a contested debt may not be used to offset an uncontested debt.
 
 Hartley v. Hartley, supra,
 
 349 So.2d at 1261;
 
 Dial Real Estate, Inc. v. Isbell,
 
 256 So.2d 133, 137-38 (La.App.1971). Although Skinner, by the nature of his cause of action, acknowledges the class’s obligation to Grant, Grant has consistently denied any liability to Skinner or the class. If Grant’s denials and defenses were patently frivolous, the Louisiana courts might regard Grant’s obligation as uncontested. Because Skinner has not shown that Grant’s defenses are patently without merit, we do not reach this issue. We hold that compensation has not occurred under Louisiana law.
 

 IV
 

 Skinner claims that Federal Financial assumed Grant’s potential liability un
 
 *985
 
 der the terms of the purchase agreement for the accounts receivable. Section 1.7 of the purchase agreement allows a reduction of any outstanding balances owed by Grant’s account debtors, for “defenses, offsets, or counterclaims” that a debtor may assert.
 
 [4]
 
 Skinner’s TILA and state usury claims take the classic form of counterclaim that an account debtor would assert in a suit against him on his debt. That these claims are asserted as causes of action, rather than as counterclaims, does not alter their status as the type of claim envisioned by the language of Section 1.7. Because we find no ambiguity in the provision, we hold that, as a matter of law,
 
 [5]
 
 Federal Financial’s right to collect outstanding accounts is subject to reduction by any damages awarded Skinner (or members of the putative class) as a result of the claims pursued in their complaint.
 

 The district court held against Skinner on the contract claim not because of the contractual provision, but because of the terms of the orders of the Bankruptcy Court approving the sale. On November 18, 1975, Judge John Galgay of the Bankruptcy Court for the Southern District of New York approved the sale, “in accordance with the terms of a Purchase Agreement, dated October 18, 1976, .... ” Federal and the district court relied on the fact that the sale was to be
 

 free and clear of all liens, security interests and encumbrances (including, without limitation, any liens, security interests or
 
 encumbrances
 
 in respect of taxes, priority claims, creditors’ claims and claims of governmental agencies)....
 

 (Emphasis added.) The sale was “free and clear” only of “encumbrances ... in respect of ... creditors’ claims.” Because Skinner’s claims, as well as those of the putative class, have not been reduced to judgment, they were not encumbrances on the accounts at the time of the sale. The point of the order was to ensure that no property interest affecting an account, whether a lien, security interest or an encumbrance, would prevent the consummation of the sale. The court made no attempt to alter the bargain embodied in the contract, which was to be enforced “according to its terms and conditions.”
 

 In a subsequent order, dated November 24, 1976, Judge Galgay amended his previous order to deal explicitly with the question of potential counterclaims by account debtors against Federal Financial.
 

 “7. Federal’s purchase of the aforesaid property shall not constitute an assumption by Federal of any liability or any obligation of the Trustee (including, without limitation, any liability or obligation in respect of any outstanding net credit balance or any litigation pending against the Bankrupt or the Trustee),
 
 provided, however, that (a) the aggregate outstanding balance of each Receivable shall be subject to certain reductions as provided in the Purchase Agreement,
 
 without recourse to the Trustee, ...” (Emphasis added.)
 

 The “certain reductions as provided in the Purchase Agreement” can refer only to the reductions specified in Paragraph 1.7, reductions that appear to refer to the types of claims asserted by Skinner on behalf of himself and the putative class in this litigation.
 

 Accordingly, we hold that the orders of the Bankruptcy Court did not prevent the assumption by FFC of Grant’s liabilities under the terms of the Purchase Agreement.
 

 On appeal, Federal argues that Section 1614 of the Consumer Credit Protection
 
 *986
 
 Act precluded Federal from voluntarily assuming liability for Grant’s statutory violations, at least as to the federal claims. Section 1614 provides:
 

 ... [A]ny civil action for a violation of this subchapter which may be brought against the original creditor in any credit transaction may be maintained against any subsequent assignee of the original creditor where the violation from which the alleged liability arose is apparent on the face of the instrument assigned unless the assignment is involuntary.
 
 [6]
 

 Federal construes this language to preclude assumption when, as here, the assignment was involuntary.
 
 [7]
 

 On its face, Section 1614 does not nullify the voluntary assumption of potential liability by those classified in law as involuntary assignees. It describes only when voluntary assignees will automatically succeed to liability, regardless of the provisions in the assignment agreement. Thus, assumption of liability by operation of law is limited to those violations “apparent on the face of the instrument.” Nothing in Section 1614 forbids an assignee to assume liability for violations not apparent on the face of the instrument.
 

 Although we have discovered no enlightening legislative history, we surmise that Congress sought to encourage judicial sales by assuring prospective buyers that the value of the accounts purchased would not be decimated by operation of law if substantial claims were later brought against the bankrupt. However, nothing in the statute suggests that Congress intended to interfere with the freedom of the purchaser and the Trustee to determine for themselves the appropriate terms of a purchase agreement, subject only to the general supervision of the Bankruptcy Referee (now Judge).
 

 Accordingly, we hold that Federal Financial Corp. assumed W. T. Grant Co.’s liability to Alvin Skinner and the members of the putative class to the extent provided in the Purchase Agreement. In all other respects, we AFFIRM the judgment of the district court. We REMAND for further proceedings consistent with this opinion.
 

 REMANDED.
 

 [1]
 

 . The class has not been certified.
 

 [2]
 

 . Although Skinner urged only Section 115 of the Consumer Credit Protection Act as a basis of liability when He amended his complaint to join Federal Financial, he was free to proceed on any additional theory so long as adding a new theory did not prejudice Federal Financial.
 
 See Oglala Sioux Tribe of Indians v. Andrus,
 
 603 F.2d 707 (10th Cir. 1979);
 
 Thompson v. Allstate Insurance Co.,
 
 476 F.2d 746 (5th Cir. 1973). Federal Financial has not argued that it was prejudiced by Skinner’s reliance on additional theories.
 

 On appeal, Skinner has not urged Section 68 of the old Bankruptcy Act as a basis of liability.
 

 [3]
 

 . “The law is clear that legal duties cannot be extinguished by the mere act of an attempted assignment.”
 
 McAlpine v. AAMCO Automatic Transmissions, Inc.,
 
 461 F.Supp. 1232, 1254 (W.D.Mich.1978).
 

 [4]
 

 . Section 1.7 of the Purchase Agreement provides:
 

 ... it is expressly understood and agreed that (a) the aggregate outstanding balance of each Receivable shall be subject to reduction, without recourse to the Trustee (except as otherwise expressly provided in this Agreement), by . . . (ii) every other defense, offset, or counterclaim of any of such persons [i. e. account debtors] (whether or not heretofore asserted in any litigation pending against the Bankrupt of the Trustee) ....
 

 [5]
 

 . “Absent latent or patent ambiguities, the meaning of a contract is for the court as a matter of law.”
 
 Battig v. Hartford Accident & Indemn. Co.,
 
 608 F.2d 119, 120 (5th Cir. 1979).
 

 [6]
 

 . Section 1614 was added in 1974.
 
 See
 
 Pub.L. No.93-495, title IV, § 413, 88 Stat. 1520 (1974). Because the provision was enacted before the accounts were assigned, it applies prospectively, not retroactively, to the purchase agreement. Consequently, we do not consider whether retroactive application would have been unfair to either side.
 

 Congress has subsequently amended this section, but the amendment does not take effect until March 31, 1982.
 
 See
 
 Pub.L.No.96-221, title VI, § 616, 94 Stat. 182 (1980) (to be codified at 15 U.S.C. § 1641).
 

 [7]
 

 . At oral argument, counsel for Skinner reasserted that the sale of accounts was voluntary under Section 1614. The argument is without merit. The Federal Reserve Board’s manual on Regulation Z and the Consumer Credit Protection Act regards transfers by bankruptcy trustee as involuntary sales under Section 1614. 2 R. Clontz,
 
 Truth-In-Lending Manual
 
 app. C-3, at C-235 (4th ed. 1976). Because this construction is not “demonstrably irrational” (indeed it is probably correct), we may not disregard it.
 
 Ford Motor Credit Co. v. Milhollin,
 
 444 U.S. 555, 563, 100 S.Ct. 790, 797, 63 L.Ed.2d 22, 30 (1980).