**H & W INDUSTRIES, INC.,**
Plaintiff–Appellant,

v.

**FORMOSA PLASTICS CORP., USA and Formosa Plastics Corp., Texas and J–M Manufacturing Company, Defendants–Appellees.**

Nos. 88–4225, 88–4373.

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1988.

Rehearing and Rehearing En Banc
Denied Dec. 15, 1988.

---

ley, Jr., New Orleans, La., James R. Moore, Jr., Jackson, Miss., for plaintiff-appellant.

Thomas J. Suszek, Oxford, Miss., William C. Pelster, New York City, James D. Veltrop, Washington, D.C., Thomas J. Schwarz, James W. Kennedy, New York City, for defendants-appellees.

Before WILLIAMS and GARWOOD, Circuit Judges, and POLOZOLA *, District Judge.

JERRE S. WILLIAMS, Circuit Judge:

This appeal arises from the district court's denial of appellant's request for a preliminary injunction and dismissal of a portion of appellant's complaint following the preliminary injunction hearing. We find that the district court erred in disposing of the claims on the merits in the context of a preliminary injunction proceeding without prior notice to the parties. We also conclude that the lower court incorrectly applied Mississippi law in resolving the parties' contract dispute. We therefore reverse the judgment of the district court which dismissed the claims on the merits, reverse the denial of the preliminary injunction, and remand for reconsideration in accordance with this opinion.

## I. *Facts and Prior Proceedings*

Appellant, H & W Industries, Inc. (H & W), is a manufacturer of polyvinyl chloride (PVC) pipe. Appellee, Formosa Plastics Corporation (Formosa), is a supplier of the PVC resin necessary for this manufacturing operation. On August 17, 1983, H & W and Formosa entered into a written contract whereby Formosa agreed to supply H & W with 4 million pounds of PVC resin per month. In 1984, H & W and Formosa agreed in writing to increase the quantity of resin to 8 million pounds per month.

The present contract dispute centers around a meeting of principals of H & W and Formosa on August 22, 1985. H & W

Ronald L. Holt, John M. Edgar, William D. Beil, Kansas City, Mo., Robert E. Bark-

* District Judge of the Middle District of Louisiana, sitting by designation.

contends that the parties reached a new agreement in which H & W agreed to purchase from Formosa 80 percent of the resin requirements for two of H & W's plants, which totalled 11 million pounds per month. H & W also claims that in this new oral contract Formosa agreed that it would not terminate H & W's resin supply during a resin shortage.

Four days later, on August 26, 1985, H & W sent Formosa a letter which confirmed the price and quantity terms of the oral contract. The letter did not mention the alleged agreement regarding continued supplies during time of resin shortage and was also silent as to the duration of the August 22 contract. Formosa made no response to the confirmatory letter.

The relationship between the parties began to deteriorate in late 1986 and early 1987, when Formosa started reducing H & W's resin supply. H & W alleges that the reduction and subsequent cancellation of the contract was in part the result of an industry-wide shortage of PVC resin which developed in early 1987, and is projected to continue until 1989. Formosa argues that the reduction was due to credit problems with H & W.

On August 31, 1987, Formosa sent H & W a written notice of cancellation, purporting to cancel the original 1983 written agreement and seeking renegotiation. H & W alleges that during the subsequent negotiations Formosa advised H & W that it was cutting H & W's resin supply so that Formosa could supply more resin to its subsidiary, J–M, who also manufactures PVC pipe and is a defendant in this lawsuit. On December 16, 1987, Formosa sent H & W a proposed 1988 contract, in which Formosa offered to supply H & W with 4.5 million pounds of resin each month. In response, H & W sued in federal district court for breach of the alleged August 22, 1985 contract, and sought a temporary restraining order to mandate Formosa to deliver the 11 million pounds of resin per month under the terms of this agreement. In addition to its breach of contract claim, H & W also alleges various other grounds for recovery, including fraud, misappropriation of trade secrets, defamation, wrongful interference with business negotiations, and two antitrust violations.[1]

The district court issued an *ex parte* temporary restraining order on December 30, 1987, directing Formosa to supply H & W with 11 million pounds of PVC resin per month. After a four-day preliminary injunction hearing, the district court entered an order on February 22, 1988, denying the injunction and dismissing counts I and VI of H & W's complaint (the breach of contract and attempted monopolization claims). *H & W Industries, Inc. v. Formosa Plastics Corp., U.S.A.*, 687 F.Supp. 271 (N.D. Miss.1988). Neither party had prior notice that the court would rule on the merits after the preliminary injunction hearing. The district court denied H & W's request for reconsideration of its order, and certified its dismissal of counts I and VI for appeal pursuant to Fed.R.Civ.P. 54(b). *Id.*

## II. *Jurisdiction*

As a threshold matter, we must determine whether this Court has jurisdiction to hear H & W's entire appeal. Formosa contends that the district court erred in certifying for appeal under Fed.R.Civ.P. 54(b) the dismissal of count VI, the attempted monopolization claim. If this contention is valid, it deprives this Court of jurisdiction over that portion of the appeal.[2] Formosa

---

1. The lower court had diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332 (1982). Mississippi law applies to the parties' state law claims.

2. This Court has jurisdiction to hear H & W's appeal of the district court's denial of the preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1) (1982). The lower court's dismissal of the breach of contract and antitrust claims is a final judgment; thus jurisdiction is proper under 28 U.S.C. § 1291 (1982). How-

ever, because H & W's suit raises multiple claims, some of which remain before the district court, the dismissed claims must be certified for appeal by the district court pursuant to Fed.R.Civ.P. 54(b). The parties do not contest that the lower court complied with the technical requirements of Rule 54(b): the court expressly directed entry of final judgment on the dismissed counts upon determination that there was no just reason for delay.

has moved to dismiss H & W's appeal of count VI on this ground.

Rule 54(b) permits the immediate appeal, upon appropriate certification by the district court, of a judgment in a case involving multiple claims or multiple parties, even when other claims or parties remain before the lower court. Formosa contends that Rule 54(b) certification is improper whenever a claim remains before the lower court which is "essentially similar" to the one certified for appeal. As applied in this case, Formosa's argument is that H & W's appeal of the dismissal of the attempted monopolization claim under Rule 54(b) is inappropriate because another antitrust claim remains before the district court. Formosa focuses on the fact that the market power of Formosa and its subsidiary, J–M, is an important factor in resolving both antitrust claims.

It is true, as Formosa notes, that the use of Rule 54(b) is tempered by an historic federal policy against piecemeal appeals. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438, 76 S.Ct. 895, 901, 100 L.Ed. 1297 (1956); *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980). Thus, a district court is to exercise its authority to certify claims for appeal under 54(b) "in the sound interest of judicial administration", taking into account such factors as "whether the claims under review were separable from others remaining to be adjudicated and whether the nature of the claims to be determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. at 1465. Formosa is incorrect, however, in arguing that this cautionary language directed to the district court strips this Court of the jurisdiction to hear any appeal certified under Rule 54(b) whenever similar claims remain before the lower court.

A district court decision to certify its judgment on some portion of a multiple claim as an appealable final judgment under Rule 54(b) is a discretionary act, which is not subject to second-guessing by this Court. Instead, the decision is reviewed for abuse of discretion. *Curtiss–Wright*, 446 U.S. at 8, 100 S.Ct. at 1465; *DeMelo v. Woolsey Marine Industries, Inc.*, 677 F.2d 1030, 1034 (5th Cir.1982); *Skinner v. W. T. Grant Co.*, 642 F.2d 981, 983–84 (5th Cir. 1981). In delineating the scope of this discretionary authority, the Supreme Court has explicitly recognized that the fact that a similar claim remains before the district court does not necessarily preclude Rule 54(b) certification. *Curtiss–Wright*, 446 U.S. at 8, n. 2, 100 S.Ct. at 1465. Indeed, contrary to Formosa's argument, the Supreme Court and this Court have long recognized that claims arising out of the same transaction or sharing certain factual elements may be appealed separately under Rule 54(b). *Sears, Roebuck & Co.*, 351 U.S. at 436 n. 9, 76 S.Ct. at 900; *Cold Metal Process Co. v. United Engineering and Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 909, 100 L.Ed. 1311 (1956); *Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225, 230 (5th Cir.1984), *cert. denied*, 471 U.S. 1005, 105 S.Ct. 1868, 85 L.Ed.2d 161 (1985). In view of these precedents, we find no abuse of discretion in the district court's decision to certify the attempted monopolization claim for appeal while retaining jurisdiction over another but different antitrust allegation.

There must also be consideration of a non-discretionary aspect of a district court's decision to certify a judgment for appeal under Rule 54(b). By its terms, Rule 54(b) only applies when multiple parties or multiple claims are involved.[3] When a complaint alleges mere variations in legal theory which are pleaded in the alternative or give rise to a single liability, true multiplicity is not present and Rule 54(b) cannot be employed to appeal a lower court judg-

---

**3.** The rule provides that "when more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b).

ment on one of the claims. *Schexnaydre v. Travelers Insurance Co.*, 527 F.2d 855, 856 (5th Cir.1976); *United States v. Crow, Pope and Land Enterprises, Inc.*, 474 F.2d 200, 202 (5th Cir.1973). In contrast, when the facts give rise to more than one legal right or cause of action, and the two grounds of recovery are not mutually exclusive, there are multiple claims which can be separately appealed upon certification under Rule 54(b). *Cullen v. Margiotta*, 811 F.2d 698, 711 (2nd Cir.), *cert. denied sub nom. Nassau County Republican Comm. v. Cullen*, —— U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *Gas-A-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1104–1105 (10th Cir.1973). *See* 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2657 (1983).

Counts VI and VII of H & W's complaint claim two separate grounds for recovery. Count VI, which was dismissed by the district court and certified for appeal, is brought under the Sherman Act and alleges an attempt to create a monopoly. Count VII, which remains before the trial court, is brought under § 7 of the Clayton Act and challenges as anti-competitive Formosa's acquisition of its subsidiary, J–M. Although market share is relevant to both of these claims, they present separate claims for relief and thus can be appealed separately upon certification under Rule 54(b). *See Gas-A-Car*, 484 F.2d at 1104–1105 (claim of attempted monopolization ruled separate from price discrimination claim for purposes of Rule 54(b), although "[a]dmittedly many of the same facts will be necessary to prove both counts.")

We conclude that the district court was within its authority in certifying for appeal under Rule 54(b) its dismissal of count VI. We find no abuse of discretion and conclude that there is no jurisdictional bar to H & W's appeal. We therefore deny Formosa's motion to dismiss that portion of the appeal.

### III. *Dismissal on the Merits Following a Preliminary Injunction Hearing*

Following expedited discovery and a four-day hearing on the motion for a pre-

liminary injunction, the district court dismissed counts I and VI of H & W's complaint, the breach of contract and attempted monopolization claims. 687 F.Supp. at 277. The court did not formally consolidate the preliminary injunction hearing with a trial on the merits under Fed.R.Civ. P. 65(a)(2). Neither party had notice that the court would rule on the merits following the preliminary injunction hearing.

Rule 65(a)(2) permits a trial court to order that the trial on the merits be advanced and consolidated with a hearing on an application for a preliminary injunction. Although no formal order of consolidation is required, it is well-settled that there must be some notice to the parties that the trial court will rule on the merits following the preliminary injunction proceeding. *Hollis v. Itawamba County Loans*, 657 F.2d 746, 749 (5th Cir. Unit A 1981); *Warehouse Groceries Management, Inc. v. Sav-U-Warehouse Groceries, Inc.*, 624 F.2d 655, 657–58 (5th Cir.1980); *Nationwide Amusements, Inc. v. Nattin*, 452 F.2d 651 (5th Cir.1971).

The notice requirement arises because ordinarily a preliminary injunction hearing does not provide a complete adjudication of the merits of the case. Indeed, the Supreme Court stresses that the preliminary injunction proceedings are generally less formal and the evidence is less complete because a party is not required to prove his case in full. Thus, "it is generally inappropriate for a federal court at a preliminary injunction stage to give a final judgment on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981).

Formosa recognizes the general rule and does not dispute that neither party had notice that the trial court would dispose of the case on the merits after the preliminary injunction proceeding. Formosa nevertheless contends that the court's action was proper.

### A. Summary Judgment Analogy

■ First, Formosa argues that the district court has unquestionable authority to

grant final relief whenever the evidence demonstrates that a party's claim is without merit, even in the context of a preliminary injunction hearing. Formosa relies on *Standard Oil Company of Texas v. Lopeno Gas Co.*, 240 F.2d 504, (5th Cir.1957), where this Court stated that

> [i]t is settled beyond controversy that if, at the hearing on an application for preliminary injunction, the evidence shows clearly that the plaintiff has not stated a claim upon which relief can be granted and cannot state such a claim, the court should dismiss the plaintiff's complaint. That long established practice is akin to the more modern practice of granting a summary judgment when there is no genuine issue of material fact.

240 F.2d at 510 (citations omitted). Formosa is incorrect in concluding that the quoted language in *Lopeno Gas* validates the district court's action in this case.[4]

*Lopeno Gas* is distinguishable from the present case because it presented no material issues of fact; "the dispute center[ed] entirely about the validity and construction of a written contract." 240 F.2d at 509-10. In contrast, the district court here weighed the evidence presented in the preliminary injunction hearing, made determinations regarding credibility of the witnesses, and then resolved issues of material fact. After deciding the fact issues, the court concluded that Formosa was entitled to judgment on counts I and VI "as a matter of law." Although the court employed the language of a summary judgment determination, its decision does not comport with the court's reasoning in *Lopeno Gas* or with standard summary judgment procedures.

■ Moreover, there is little support for Formosa's argument that a summary judgment ruling is appropriate following a preliminary injunction hearing without notice to the parties that a decision on the merits will occur.[5] Other courts and leading commentators question this practice. *Communications Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1205 (7th Cir.1985); *Progress Development Corporation v. Mitchell*, 286 F.2d 222, 232–34 (7th Cir. 1961); C. Wright and A. Miller, 11 *Federal Practice and Procedure: Civil* § 2950 at 492–493 (1973). The primary objection is that the court is rendering *sua sponte* summary judgment without providing notice or conducting a summary judgment hearing as required by Fed.R.Civ.P. 56. In addition, the issues which are considered in the preliminary injunction hearing are entirely different from the focus of a summary judgment adjudication. Thus, it is a "risky approach" to assume that the often incomplete evidence adduced at a preliminary injunction hearing is sufficient to determine whether a claimant is entitled to judgment as a matter of law. *Communications Maintenance*, 761 F.2d at 1205.

### B. Prejudice

As a second ground for upholding the district court's dismissal, Formosa argues that H & W has failed to demonstrate prejudice due to the lack of notice that the court would rule on the merits following the preliminary injunction proceeding. A party who does not receive proper notice is entitled to a further hearing on the merits "unless the failure to afford notice has no prejudicial effect on the consideration of its claim." *Wohlfahrt v. Memorial Medical*

---

**4.** Neither the district court nor Formosa suggest that H & W's complaint on counts I and VI is insufficient on its face and fails to state a claim for relief. Such a failure would provide a valid ground for dismissal at the preliminary injunction stage. C. Wright and A. Miller, 11 *Federal Practice and Procedure: Civil* § 2950 at 490 (1973).

**5.** In addition to the quoted language in *Lopeno Gas*, Formosa relies on a 1900 Supreme Court case to support its contention that the lower court's action was proper. *Mast, Foos & Co. v. Stover Manufacturing Co.*, 177 U.S. 485, 495, 20

S.Ct. 708, 712, 44 L.Ed. 856 (1900). In *Mast, Foos*, the Supreme Court held that it was appropriate for an appellate court to dismiss a bill of equity after overturning a lower court's grant of a preliminary injunction when the bill was "obviously devoid of equity upon its face, and such invalidity [was] incapable of remedy by amendment." *Id.* Thus, *Mast, Foos* offers little support for Formosa's argument that H & W's complaint should be dismissed notwithstanding the fact that it states grounds for relief and is not insufficient on its face.

*Center*, 658 F.2d 416, 418 (5th Cir. Unit A 1981); *Eli Lilly & Company v. Generix Drug Sales, Inc.*, 460 F.2d 1096, 1106 (5th Cir.1972).

To determine whether H & W was prejudiced by the lack of notice that the court would dispose of its claims on the merits, we must look to the record and determine whether H & W was afforded a full and complete hearing on the dismissed claims. The fact that H & W had the opportunity to present *some* evidence on the underlying merits of the case is not enough. Indeed, we held in *Nationwide Amusements* that a district court erred in dismissing a suit on the merits after a preliminary injunction hearing without notice to the parties even when "a number of witnesses appeared . . . [and] the case was developed in some detail, [and] the issues presented by the motion for preliminary injunction are similar if not the same as those raised for final determination." 452 F.2d at 652.

■ There is ample evidence which establishes that H & W was not provided its full day in court at the preliminary injunction hearing. Instead, the time allowed for discovery and the time allotted for the hearing itself precluded an adequate exploration of H & W's breach of contract and attempted monopolization claims.

The parties had conducted discovery for only six weeks before these counts were dismissed by the district court.[6] The transcript at the hearing indicates that the parties were pressured to present their case as briefly as possible, focusing on the factors relevant to the preliminary injunction determination. The transcript also shows that H & W's counsel explicitly informed the court that he was not prepared to present the attempted monopolization claim

in full at the preliminary injunction hearing.[7]

Perhaps most significantly, H & W had filed a demand for jury trial prior to the preliminary injunction proceeding. Fed.R. Civ.P. 65(a)(2) explicitly states that the provisions allowing consolidation of a preliminary injunction hearing with a hearing on the merits "shall be so construed and applied as to save to the parties any rights they may have to trial by jury." This Court has held that a hearing on a preliminary injunction may be consolidated with a hearing on the merits "provided the right to trial by jury is preserved." *Bowles v. Bennett*, 629 F.2d 1092, 1094 (5th Cir.1980).

In dismissing H & W's breach of contract and attempted monopolization claims, the district court conclusively resolved factual issues at the preliminary injunction stage— issues which otherwise would have been decided by a jury. This action by the district court clearly was prejudicial to the party claiming lack of notice when it had filed a demand for jury trial. *See Bowles*, 629 F.2d at 1094–95; *Eli Lilly*, 460 F.2d at 1107.

We conclude that the district court improperly dismissed H & W's breach of contract and attempted monopolization claims without notice that a ruling on the merits would occur, and that H & W was prejudiced by this lack of notice. Accordingly, we must reverse the dismissal of counts I and VI of the complaint.

## IV. *Denial of the Preliminary Injunction*

■ The denial of a preliminary injunction is generally left to the discretion of the district court, and will be disturbed only

---

6. H & W was unable to depose important witnesses, including Formosa's Chairman, prior to the preliminary injunction proceedings. *Cf. Willits v. Richardson*, 497 F.2d 240, 244 (5th Cir.1974).

7. Because only six weeks had passed between the filing of its complaint and the preliminary injunction hearing, H & W had not yet retained an expert witness to offer testimony on market definition and characteristics to support its attempted monopolization claim. Nevertheless,

the district court dismissed this count of the complaint, concluding that H & W relied on "unsupported conclusions about the PVC industry and resin market" which were insufficient to establish the essential elements of an antitrust suit. 687 F.Supp. at 276. The court ignored the fact that H & W's claims were unsupported because it had not yet had the opportunity to conduct sufficient discovery and retain the expert opinions necessary to substantiate its allegations.

upon an abuse of discretion. However, a denial on the basis of erroneous legal principles is reviewed *de novo* as is any other conclusion of law. *FTC v. Southwest Sunsites, Inc.,* 665 F.2d 711, 717 (5th Cir.), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 846 (1982). We find an abuse of discretion in the district court's decision to deny the temporary injunction based upon its ruling on the underlying merits of the case. The lower court also improperly applied Mississippi law in considering H & W's breach of contract claim. We must therefore reverse the district court's denial of a preliminary injunction and remand for further consideration of H & W's request for injunctive relief.

### A. Analytical Prerequisites

This Court has set out a four-pronged analysis for the adjudication of a preliminary injunction request. The movant has the burden of proving that: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) the injunction will not disserve the public interest. *Apple Barrel Productions, Inc. v. Beard,* 730 F.2d 384, 386 (5th Cir.1984); *Dallas Cowboy Cheerleaders v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1187 (5th Cir.1979). A grant or denial of a preliminary injunction "must be the product of a reasoned application of the four factors held to be necessary prerequisites." *Florida Medical Association, Inc. v. U.S. Dept. of Health, Education, and Welfare,* 601 F.2d 199, 202 (5th Cir.1979).

■ Although the district court briefly noted the four elements of a preliminary injunction inquiry, its ruling was based solely on the underlying merits of H & W's breach of contract and attempted monopolization claims. In short, the court denied the injunction because it determined that H & W failed to prove its case in full at the preliminary injunction hearing.[8] The court's decision ignored the Supreme Court's instruction that a party "is not required to prove his case in full at a preliminary injunction hearing." *University of Texas v. Camenisch,* 451 U.S. at 395, 101 S.Ct. at 1834. We must therefore reverse and remand the denial of the preliminary injunction with instructions for the district court to undertake the established preliminary injunction inquiry.

### B. Statute of Frauds

The court also erred in applying Mississippi's general statute of frauds to the alleged August 22, 1985 agreement between Formosa and H & W. We find that under Mississippi law the Uniform Commercial Code (UCC) statute of frauds controls.

Mississippi's general statute of frauds provides that any agreement which is not to be performed within fifteen months must be in writing and signed by the party to be charged. Miss. Code. Ann. § 15–3–1 (1972). The district court found that the August 22 oral agreement and the August 26 confirmatory letter failed to meet these requirements because the letter was not signed by Formosa. The court therefore concluded that the August 22 agreement between the parties was not an enforceable contract. 687 F.Supp. at 274–275.

H & W argues that the August 22 agreement is covered exclusively by Mississippi's Uniform Commercial Code statute of frauds, Miss. Code Ann. § 75–2–201(2) (1972). The Code provides that, as between merchants, a written confirmation of a contract (as was present in this case) can satisfy the statute of frauds if the party who receives the confirmation fails to object formally. The alleged contract is for the sale of goods, and thus potentially within the Uniform Commercial Code. Under the UCC statute of frauds, the parties' agree-

---

**8.** The district court first determined that H & W was not entitled to judgment on the merits of the contract claim, and dismissed this portion of the complaint. The court *then* concluded that an injunction would not issue because a dismissed claim cannot serve as a basis for an injunction. 687 F.Supp at 275.

ment has the potential of being an enforceable contract.

The district court nevertheless held that the requirements of Mississippi's general statute of frauds should also apply, relying on this Court's opinion in *Roberts v. Southern Wood Piedmont Co.*, 571 F.2d 276 (5th Cir.1978). The *Roberts* decision involved a contract for the sale of goods which was indefinite in duration. The court determined that the agreement was not enforceable under Mississippi's general statute of frauds without mention of the UCC provision. Because of the similarity between the *Roberts* contract and alleged contract between H & W and Formosa, the district court concluded that *Roberts* mandated that the general statute of frauds should also apply in this case. In *Roberts*, however, there was no confirmatory memorandum which could have placed the contract within the UCC statute of frauds. Thus, the case is not controlling.[9]

■ In fact, there are no court decisions applying Mississippi law squarely on point as to the seeming conflict between the two statutes presented in this case. There is, however, a provision of the Uniform Commercial Code as enacted in Mississippi which addresses this situation. Under UCC § 1–103, pre-UCC law supplements the Code provisions and thus is still applicable: "unless *displaced* by particular provisions of the Code." Miss.Code Ann. § 75–1–103 (1972) (emphasis added). In this particular case, the general statute of frauds and the UCC provision are in conflict and mandate different results. Under Mississippi's enactment of UCC § 1–103, the Code provision controls.

This conclusion derived from statutory analysis is consistent with case law addressing similar issues. In many cases involving the sale of goods and construing Mississippi law the courts have simply presumed that the UCC statute of frauds applies, even in the face of potential conflicts with requirements embodied in other statutory provisions. *See Babst v. FMC Corp.*, 661 F.Supp. 82, 87–88 (S.D.Miss.1986); *Perdue Farms, Inc. v. Motts, Inc.*, 459 F.Supp. 7, 12–13 (N.D.Miss.1978); *Wholesale Materials Co. v. Magna Corp.*, 357 So.2d 296, 298–99 (Miss.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). Moreover, the application of the Uniform Commercial Code statute of frauds to the contract at issue in this case is supported by statements of the Mississippi Supreme Court that "the UCC is now the controlling law in this State insofar as the sale of goods is concerned." *Hughes v. Collegedale Distributors*, 355 So.2d 79, 80 (Miss. 1978). *See also J.L. Teel Co. v. Houston United Sales, Inc.*, 491 So.2d 851, 857 (Miss.1986). Finally, other courts and commentators that have addressed the conflict between the UCC and the general statute of frauds of a state have found that the UCC provision controls in the sale of goods context. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 140–142 (6th Cir.1983); *Rajala v. Allied Corp.*, 66 B.R. 582, 592 (D.Kan.1986); *Merwin v. Ziebarth*, 252 N.W.2d 193 (N.D.1977). *See also* R. Duesenberg and L. King, *Sales and Bulk Transfers under UCC*, § 2.02(6) (1987).

We therefore conclude that under Mississippi law the district court should have applied the UCC statute of frauds to the parties' August 22, 1985 agreement.[10] We

---

**9.** The *Roberts* court rejected the argument that a promissory note executed in the transaction served as a written memorandum of the contract because the note did not mention any agreement between the parties or contain the substantial terms of the contract, including price. 571 F.2d at 278. In contrast, the August 26, 1985 letter from H & W to Formosa explicitly stated that it was confirming the terms agreed upon by the parties, and mentioned the quantity, price, and arrangements for payment. Unlike the promissory note in *Roberts*, the writing by H & W meets the requirements of a confirmatory memorandum under UCC § 2–201.

**10.** Although we hold that the UCC statute of frauds provision should apply, we leave it to the district court to ascertain the terms of the August 22, 1985 agreement between the parties. We do not decide whether the agreement is limited to the terms of the written confirmatory letter, which stated only the price and quantity of the resin purchase, or whether the contract also includes various other provisions such as the alleged agreement that Formosa would not cut off H & W's resin supply in times of resin shortage.

must also reverse the denial of the preliminary injunction based on this legal error.[11]

## V. *Conclusion*

The district court was within its authority in certifying for appeal under Rule 54(b) its dismissal of counts I and VI of H & W's complaint. Formosa's motion to dismiss the appeal from the district court's dismissal of count VI is denied.

The district court erred in disposing of H & W's claims on the merits in the context of a preliminary injunction hearing without prior notice to the parties. H & W was prejudiced by this lack of notice because it did not have an opportunity to present its case in full. We therefore reverse the dismissal of counts I and VI of H & W's complaint.

We also reverse the decision to deny the injunction because the denial was based on H & W's failure to prove its case as a final adjudication. In addition, the erroneous application of Mississippi's general statute of frauds necessitates reversal of the preliminary injunction decision. We reverse the denial of the preliminary injunction and remand for reconsideration in accordance with this opinion.

MOTION TO DISMISS THE APPEAL FROM THE DISTRICT COURT'S DISMISSAL OF COUNT VI IS DENIED.

REVERSED AND REMANDED.

11. We recognize that the district court set out an alternative ground for dismissing H & W's breach of contract claim and denying the preliminary injunction. The court concluded that even if there was an enforceable contract under the statute of frauds, H & W still would not prevail because the August 22 oral contract was indefinite in duration and thus terminable at will by Formosa under Mississippi law. We cannot uphold the lower court's decision on this ground.

First, the court's decision to rule on the merits of the case was fatally flawed and requires reversal. But in addition to this procedural defect, we also cannot uphold the district court's ruling on the terminable at will issue because the court completely failed to address H & W's response which was offered below and was supported by at least some testimony in the record. The response was that the parties had "otherwise agreed" that the contract would not be terminable at will. If this contention succeeds, it makes the contract binding under Uniform Commercial Code § 2–309(2), Miss.Code Ann. § 75–2–309(2) (1972) for a "reasonable" time. While we offer no opinion on the merits of H & W's assertion, we note that H & W raises a valid legal argument which should be considered if the district court, when ruling on the merits at an appropriate time, again concludes that the August 22 contract was of indefinite duration.